UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MEGAN VILLELLA, *Individually and On Behalf of All Others Similarly Situated*,<br><br>Plaintiff,<br><br>vs.<br><br>CHEMICAL & MINING CO. OF CHILE INC., PATRICIO CONTESSE, PATRICIO DE SOLMINIHAC, and RICARDO RAMOS,<br><br>Defendants. | C. A. No.: 15 CV 02106-ER<br><br>CLASS ACTION |
| LYNN MOLINARO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHEMICAL AND MINING COMPANY OF CHILE INC. PATRICIO CONTESSE GONZALEZ, PATRICIO DE SOLMINIHAC and RICARDO RAMOS,<br><br>Defendants. | C.A. No. 1:15-CV-02884-ER |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO APPOINT RICHARD GIELATA AS LEAD PLAINTIFF AND TO APPROVE THE SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

                                                    **Page**

I.    STATEMENT OF FACTS ............................................................................................................1

II.    ARGUMENT.................................................................................................................................2

        A.    The Actions Should be Consolidated for All Purposes ........................................................2

        B.    Gielata Satisfies the Lead Plaintiff Requirements of the PSLRA.......................................3

        C.    Gielata Has the Largest Known Financial Interest in the Relief Sought by the Class...................................................................................................................................4

        D.    Gielata Satisfies the Requirements of Federal Rule of Civil Procedure Rule 23.................................................................................................................................5

                1.    Gielata's claims are typical of the claims of all the class members.........................5

                2.    Gielata will adequately represent the interests of the Class....................................6

        E.    Gielata's Selection of Lead Counsel Should Be Approved .................................................7

III.    CONCLUSION..............................................................................................................................7

000700-00 781097 V1

Class member, Richard Gielata ("Gielata" or "Movant") respectfully submits this Memorandum of Law in support of his Motion: (1) to consolidate the above-captioned related actions (the "actions"); (2) to be appointed as Lead Plaintiff in the above-referenced action pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3); and (3) for approval of his selection of Hagens Berman Sobol Shapiro LLP ("Hagens Berman") as Lead Counsel for the Class.

## I.   STATEMENT OF FACTS

This is a federal securities class action brought on behalf of investors who purchased securities of Chemical & Mining Co. of Chile Inc. (referred to hereinafter as the "Company" or "SQM"). The class consists of those investors who purchased SQM securities traded on the New York Stock Exchange between June 30, 2010, and March 17, 2015 (the "Class Period").[1] SQM was traded on the New York Stock Exchange ("NYSE") during the Class Period.

The Company is one of the largest producers and distributors of specialty plant nutrient, iodine, lithium, potassium-related fertilizers and industrial chemicals in the world. It trades under the ticker symbol SQM. Chile's Attorney General announced on February 24, 2015, that he would lead an investigation into the escalating bribery and tax evasion scandal involving the financial firm Banco Penta ("Penta" or the "Penta Group"), a corruption scandal which has embroiled numerous politicians across the country's political spectrum. According to charges later lodged against Carlos Alberto Delano and Carlos Eugenio Lavin, the two Penta founders used fake expense receipts from family members to lower their taxable income and allegedly made illegal payments to parliamentary candidates and a deputy minister.

On February 26, 2015, SQM issued the first of a series of disclosures, which, for the first time, publicly linked the Company to the ongoing Independent Democratic Union ("UDI") contribution scandal and ultimately culminated in the termination of the Chief Executive Officer and resignation of three SQM Board members. The Company disclosed in a press release that, at the request of the Chairman of the Board of SQM, an extraordinary Board meeting was held to

---

[1] The facts are gathered from the March 19, 2015, complaint captioned *Megan Villella. v. Chemical & Mining Co. of Chile Inc., et al.*, No. 15-cv-02106-ER.

analyze the ongoing political scandal and the Attorney General's investigation. In that meeting, the Board resolved to establish a special committee comprised of Board members Wolf Von Appen, José María Eyzaguirre Baeza, and Juan Antonio Guzmán Molinari.

On March 11, 2015, SQM disclosed that its Board of Directors would meet the next day to evaluate the request by the Public Prosecutor for delivery of certain information pertaining to the alleged bribery scandal. On March 16, 2015, the Company announced that it had turned over all of the information requested by the Public Prosecutor in the March 6, 2015 Letter to the Chilean Internal Revenue Service for the last six years, which the Company purported was the proper authority to review such information. Moreover, the Company also announced that the Board had agreed to terminate CEO Patricio Contesse effectively immediately. In the prior weeks, Contesse had attempted to block the Company's decision to turn over the documents.

As a result of these partial disclosures, SQM stock consistently traded downward, from a closing price of $26.17 per share on February 25, 2015, to close at $22.10 per share on March 17, 2015, a decline of 15.55% on unusually heavy trading volume during that period. On March 18, 2015, SQM issued a press release indicating that the three representatives on its Board from Canadian stakeholder Potash Corporation, SQM Vice Chairman Wayne Brownlee, who also serves as the Chief Financial Officer of Potash Corporation, and directors José María Eyzaguirre and Alejandro Montero, had resigned the prior day. As a result of this news, shares of SQM fell an additional $3.45 per share, or more than 15.6%, on extremely heavy volume, to close at $18.65 per share on March 18, 2015.

## II.     ARGUMENT

### A.     The Actions Should be Consolidated for All Purposes

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Consolidation is appropriate under Federal Rule of Civil Procedure 42(a) where, as here, the actions involve common questions of law or fact. *See* Fed. R. Civ. P. ("[i]f actions before the court involve a common question of law or fact, the court may: (1) join for

- 2 -

hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."). Here, consolidation is appropriate because the Actions each bring claims on behalf of shareholders who were deceived by SQM in violation of the Securities Act. The Actions name the same defendants and rely upon the same or substantially similar facts that occurred during the same time period. Additionally, the Actions seek to resolve the same legal issues, and have been brought on behalf of substantially similar classes of purchasers.[2] Accordingly, the Court should consolidate the Actions pursuant to Rule 42(a).

### B.   Gielata Satisfies the Lead Plaintiff Requirements of the PSLRA

The PSLRA provides the procedure that governs appointment of a lead plaintiff in securities class actions arising under the Exchange Act. *See* 15 U.S.C. § 78u-4(a)(1)-(3)(B)(iii)(I). First, the plaintiff who files the initial action must publish notice to the class within 20 days of filing the initial action. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Here, the class action was filed on March 19, 2015, and notice was published that same day. *See* Declaration of Reed R. Kathrein in Support of Motion to Consolidate Related Cases, Appoint Richard Gielata as Lead Plaintiff and to Approve the Selection of Lead Counsel, filed concurrently herewith ("Kathrein Decl."), Ex. A (Notice of Pendency). Within 60 days after publication of notice, "any person" who is a member of the class can move to be appointed as lead plaintiff regardless of whether they filed a complaint. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(aa).

Once the motions have been filed, the Court is charged with selecting the class member most capable of adequately representing the interests of the class to serve as lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B). The Court:

> (s)hall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be ***most capable of adequately representing the interests of class members*** in accordance with this subparagraph.

15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added).

The "most adequate plaintiff" assumes a rebuttable presumption that:

---

[2] There is a third complaint that was filed in the Central District of California entitled *Chris Kramer v. Chemical & Mining Co. of Chile Inc., et al.*, No. 2:15-cv-02250-DMG filed on March 26, 2015. Movant Gielata intends to file notice of his motion in that court as well.

- 3 -

> . . . [T]he most adequate plaintiff in any private action arising under this chapter is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) *in the determination of the court, has the largest financial interest in the relief sought by the class*; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (emphasis added).

The presumption can only be overcome by a showing that a lead plaintiff will not fairly and adequately represent the Class, or is subject to unique defenses that will render such plaintiff incapable of adequately representing the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Under this statutory test, Gielata is the "most adequate plaintiff" and should be appointed as lead plaintiff on behalf of the proposed Class. Gielata has timely moved this Court for appointment as lead plaintiff in accordance with the PSLRA and has the willingness, resources and expertise to obtain excellent results for the Class. Consequently, this Court should appoint him as lead plaintiff and approve Movant's selection of Hagens Berman as lead counsel for the Class.

**C.      Gielata Has the Largest Known Financial Interest in the Relief Sought by the Class**

As a result of Movant's purchases of SQM securities throughout the Class Period, he has a financial interest of approximately $56,000. Kathrein Decl., Exs. B and C. At the end of the Class Period, Gielata held 1500 SQM securities. Gielata believes he has the largest financial interest in this class action compared to any other party moving for lead plaintiff. The PSLRA provides that there is a rebuttable presumption that the "most adequate plaintiff" is the plaintiff with the largest financial interest in the relief sought by the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). "So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status . . . ." *Ferrari v. Gisch*, 225 F.R.D. 599, 603 (C.D. Cal. 2004) (citing *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002)). Gielata, therefore, is presumptively the "most adequate plaintiff" pursuant to the PSLRA.

**D.     Gielata Satisfies the Requirements of Federal Rule of Civil Procedure Rule 23**

Section 27(a)(3)(B)(iii)(I)(cc) of the Securities Act and Section 21D(a)(3)(B)(iii)(I)(cc) of the Securities Exchange Act of 1934, as amended by the PSLRA, provide that the lead plaintiff must satisfy the typicality and adequacy requirements of Federal Rule of Civil Procedure 23(a). *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 439 (S.D.N.Y. 2008) ("At this point, a prospective lead plaintiff need only make a preliminary, prima facie showing that his or her claims satisfy the requirements of Rule 23."). At this stage of the litigation, "typicality and adequacy of representation are the only provisions of Rule 23 relevant to the determination of lead plaintiff under the PSLRA." *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007). *See also Kuriakose v. Federal Home Loan Mortgage Co.*, 2008 U.S. Dist. LEXIS 95506, at *11-12 (S.D.N.Y. Nov. 24, 2008) ("In a motion to be appointed as lead plaintiff, a class member need only make a 'preliminary showing' that the Rule's typicality and adequacy requirements have been satisfied."). As detailed below, Gielata satisfies both the typicality and adequacy requirements of Rule 23(a), and should therefore be appointed lead plaintiff in this action.

**1.     Gielata's claims are typical of the claims of all the class members.**

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class." The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiffs' claims arise from the same event or course of conduct that gives rise to claims of other class members, and when the claims are based on the same legal theory. *See Reimer v. Ambac Fin. Grp., Inc.*, 2008 U.S. Dist. LEXIS 38729, at *12 (S.D.N.Y. May 9, 2008) ("[Typicality] is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.") (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

In this case, the typicality requirement is met because Gielata's claims are identical to the claims of the other Class Members. Like all SQM investors, Gielata purchased securities of SQM.

- 5 -

Gielata and all the members of the Class purchased SQM securities when the prices were artificially inflated as a result of Defendants' misrepresentations and omissions, and thus, both Gielata and the Class Members suffered damages as a result of these purchases.  Simply put, Gielata, like all the other Class Members:  (1) purchased SQM securities; (2) purchased SQM securities at artificially inflated prices as a result of the Defendants' misrepresentations and omissions; and (3) suffered damages thereby.  Gielata's claims and injuries arise from the same event or course of conduct that gave rise to the claims of other class members.

Moreover, Gielata is not subject to any unique or special defenses.  Thus, Gielata meets the typicality requirement of Rule 23 because Gielata's claims are the same as the claims of the other Class Members.

### 2. Gielata will adequately represent the interests of the Class.

The requirements of Rule 23(a) relating to adequate representation are satisfied if:  (1) the class counsel is qualified, experienced and generally able to conduct the litigation; (2) the interests of the class are not antagonistic to one another; and (3) the lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy.  *See Ferrari v. Impath, Inc.*, 2004 U.S. Dist. LEXIS 13898, at *19 (S.D.N.Y. July 2, 2004).  As described below, Gielata will adequately represent the interests of the class.

Gielata's interests are clearly aligned with the members of the Class because Movant's claims are identical to the claims of the Class.  There is no evidence of antagonism between Gielata's interests and those of proposed Class Members.  Furthermore, Gielata has a significant, compelling interest in prosecuting this action to a successful conclusion based upon the very large financial interest Movant incurred as a result of the wrongful conduct alleged herein.  This motivation, combined with Gielata's identical interest with the members of the Class, clearly shows that Gielata will adequately and vigorously pursue the interests of the Class.  In addition, Gielata has selected counsel that is highly experienced in prosecuting securities class actions such as this one to represent the fund and the Class.

In sum, because of Gielata's common interests with the Class Members, Movant's clear motivation and ability to vigorously pursue this action, and Movant's competent counsel, the

adequacy requirement of Federal Rule of Civil Procedure 23(a) is met in this case.  Therefore, since Gielata not only meets both the typicality and adequacy requirements of Rule 23(a), and has sustained the largest amount of losses at the hands of the Defendants, Gielata is, in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii), presumptively the most adequate plaintiff to lead this action.

### E.    Gielata's Selection of Lead Counsel Should Be Approved

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the Class, subject to the Court's approval.  15 U.S.C. § 78u-1(a)(3)(B)(v).  Thus, this Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class."  15 U.S.C. § 78u-l(a)(3)(B)(iii)(II)(aa).  Gielata has selected Hagens Berman to serve as lead counsel for the Class.  Hagens Berman has extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors.  *See* Kathrein Decl., Ex. D (Hagens Berman Résumé).  This Court may be assured that in the event that this motion is granted, the members of the Class will receive the highest caliber of legal representation.

### III.    CONCLUSION

For the foregoing reasons, the Court should consolidate the related cases, appoint Gielata as lead plaintiff and approve his selection of Hagens Berman Sobol Shapiro LLP as lead counsel for the Class.

DATED:  May 18, 2015            Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP


By _____/s/ Jason A. Zweig_____
     Jason A. Zweig, JZ-8107

555 Fifth Avenue, Suite 1700
New York, NY  10017
Telephone:  (212) 752-5455
Facsimile:  (917) 210-3980
jasonz@hbsslaw.com

- 7 -

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

Reed R. Kathrein (139304)
Peter E. Borkon (212596)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone:  (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com

[Proposed] Lead Counsel for Richard Gielata and the Class

Joseph N. Gielata
7811 Eads Avenue, Suite 207
La Jolla, CA 92037
Telephone:  (302) 507-4400
gielata@gmail.com

Additional Counsel for Movant Richard Gielata

**CERTIFICATE OF SERVICE**

  I hereby certify that I am the ECF User whose ID and password are being used to electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

                    Jason A. Zweig
                    JASON A. ZWEIG

000700-00 781097 V1