**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MEGAN VILLELLA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHEMICAL & MINING CO. OF CHILE INC., PATRICIO CONTESSE, PATRICIO DE SOLMINIHAC, and RICARDO RAMOS,<br><br>Defendants. | **No.:** 1:15-cv-02106-ER |
| LYNN MOLINARO, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHEMICAL AND MINING COMPANY OF CHILE INC., PATRICIO CONTESSE GONZALEZ, PATRICIO DE SOLMINIHAC and RICARDO RAMOS,<br><br>Defendants. | **No.:** 1:15-cv-02884-ER |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION BY SAM AND MEGAN VILLELLA AND LEROY ROBINSON FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

**I.** PRELIMINARY STATEMENT ..... 1

**II.** STATEMENT OF FACTS ..... 2

**III.** ARGUMENT ..... 5

A. THE RELATED ACTIONS SHOULD BE CONSOLIDATED ..... 5

B. VILLELLA AND ROBINSON SHOULD BE APPOINTED LEAD PLAINTIFF ..... 6

1. Villella and Robinson are Willing to Serve as a Class Representative ..... 6

2. Villella and Robinson Have the "Largest Financial Interest" ..... 7

3. Villella and Robinson Otherwise Satisfy the Requirements of Rule 23 of the Federal Rules of Civil Procedure ..... 8

4. Villella and Robinson Will Fairly and Adequately Represent the Interests of the Class and are Not Subject to Any Unique Defenses ..... 10

C. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ..... 11

**IV.** CONCLUSION ..... 11

## TABLE OF AUTHORITIES

**Cases** | **Page(s)**

*Albert Fadem Trust v. Citigroup Inc.*, 239 F. Supp. 2d 344 (S.D.N.Y. 2002)....8

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)....10

*Beck v. Maximus*, 457 F.3d at 296....10

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188 (S.D.N.Y. 2008)....5

*Canson v. WebMD Health Corp.*, No. 11-cv-5382-JFK, 2011 WL 5331712 (S.D.N.Y. Nov. 7, 2011)....8

*Chilton v. Chiumento Group*, 365 Fed. App'x 298 (2d Cir. 2010)....8

*Ghodooshim v. Qiao Xing Mobile Commc'n Co., Ltd.*, No. 12-cv-9264-JSR, 2013 WL 2314267 (S.D.N.Y. May 21, 2013)....9

*Gluck v. Cellstar Corp.*, 976 F. Supp. 542 (N.D. Tex. 1997)....9

*In re Bank of Am. Corp. Sec., Deriv. and ERISA Litig.*, 258 F.R.D. 260 (S.D.N.Y. 2009)....8

*In re Comverse Tech., Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007)....7

*In re Donkenny, Inc. Sec. Litig.*, 171 F.R.D. 156 (S.D.N.Y. 1997)....7

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2d Cir. 1992)....9

*In re Elan Corp. Sec. Litig.*, No. 02 Civ. 865 (WK) (FM), 2002 U.S. Dist. LEXIS 23162 (S.D.N.Y. Dec. 3, 2002)....8

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-cv-10240-CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007)....9

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d at 296 .....9

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) ..... 8

*Lax v. First Merchants Acceptance Corp.*,
1997 WL 461036 (N.D. Ill. 1997) ..... 7

*Lintz v. Agria Corp*.,
2008 U.S. Dist. LEXIS 99846 (S.D.N.Y. Dec. 3, 2008) .....5

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008)..... 7, 11

*Xianglin Shi v. Sina Corp.*, No. 05-cv-2154-NRB,
2005 WL 1561438 (S.D.N.Y. July 1, 2005) ..... 9

**Statutes**

15 U.S.C. § 78u 4(a)(3)(B)(v)..... *passim*

**Rules**

Fed. R. Civ. P. 23(a)(3)..... *passim*

Fed. R. Civ. P. 42(a) ..... 5

**Other Authorities**

Manual for Complex Litigation (Third), § 20.123 (1995) ..... 5

Sam and Megan Villella ("Villella") and Leroy Robinson ("Robinson") respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), and 15 U.S.C. § 78u-4(a)(3)), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Rule 42 of the Federal Rules of Civil Procedure, for the entry of an Order: (1) consolidating the above-captioned actions (the "Related Actions"); (2) appointing Villella and Robinson as Lead Plaintiff on behalf of all persons who purchased or otherwise acquired the securities of Chemical & Mining Co. of Chile Inc. ("SQM" or the "Company") between June 30, 2010 through March 17, 2015, inclusive (the, "Class Period"); (3) approving Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class; and, (4) granting such other and further relief as the Court may deem just and proper.

## I. PRELIMINARY STATEMENT

At least two securities class actions[1] have been filed in this District. Each raise substantially similar allegations: defendants violated Sections 10(b) and 20(a) of the Exchange Act by issuing false and misleading financial statements.

Pursuant to the PSLRA, the court appoints as lead plaintiff the movant or movants who possess the largest financial interest in the outcome of the action and who otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

[1] The two actions are entitled: *Villella et al v. Chemical & Mining Co. of Chile Inc. et al*, 1:15-cv-02106-ER and *Molinaro v. Chemical and Mining Company of Chile Inc. et al*, 1:15-cv-02884-ER. There is also one action pending in the US District Court for the Central District of California entitled *Chris Kramer v. Chemical and Mining Co. of Chile Inc. et al*, 2:15-cv-02250-DMG-AS. The *Villella* complaint and the *Kramer* complaint allege a class period of March 4, 2014 through March 17, 2015, inclusive. The *Molinaro* complaint alleges a class period of June 30, 2010 through March 17, 2015, inclusive. Villella and Robinson's losses are calculated using the largest class period of the pending cases, June 30, 2010 through March 17, 2015, inclusive, which Villella and Robinson believes is the most appropriate class period.

Villella and Robinson, with losses of approximately $11,084 in connection with their purchases of SQM securities during the Class Period, have the largest financial interest in the relief sought in this action. Villella and Robinson further satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, as they are an adequate representative with claims typical of the other Class members. Accordingly, Villella and Robinson respectfully submit that they should be appointed Lead Plaintiff.

## II. STATEMENT OF FACTS

SQM purports to be the world's largest producer of potassium nitrate, iodine and lithium chemicals. The Company produces specialty plant nutrients, iodine and iodine derivatives, lithium and lithium derivatives, potassium chloride, potassium sulfate and certain industrial chemicals (including industrial nitrates and solar salt). SQM products are sold in more than 115 countries through its worldwide distribution network, with 88% of sales in 2013 derived from countries outside Chile. SQM products are mainly derived from mineral deposits found in northern Chile.

SQM Series A and Series B common shares are listed on the Santiago Stock Exchange, while Series B American Depositary Shares ("ADS") have been listed on the NYSE since 1993, under the ticker symbol "SQM."

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) money from SQM was channeled illicitly to electoral campaigns for the Independent Democratic Union ("UDI"), Chile's largest conservative party; (2) the Company lacked adequate internal controls over financial reporting; and (3) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

Chile's Attorney General announced on February 24, 2015 that he would lead the investigation into the escalating bribery and tax evasion scandal involving the financial firm Banco Penta ("Penta" or the "Penta Group"), a corruption scandal which has embroiled numerous politicians across the country's political spectrum. According to charges later lodged against Carlos Alberto Delano and Carlos Eugenio Lavin, the two Penta founders used fake expense receipts from family members to lower their taxable income and allegedly made illegal payments to parliamentary candidates and a deputy minister.

On February 26, 2015, SQM issued the first of a series of disclosures, which, for the first time, publicly linked the Company to the ongoing UDI contribution scandal and ultimately culminated in the termination of the Chief Executive Officer and resignation of three SQM Board members. The Company disclosed in a press release that, at the request of the Chairman of the Board of SQM, an extraordinary Board meeting was held to analyze the ongoing political scandal in and the Attorney General's investigation. In such meeting, the Board resolved to establish a special committee comprising of Board members Wolf Von Appen, José María Eyzaguirre Baeza, and Juan Antonio Guzmán Molinari.

Thereafter, on March 11, 2015, Legislator Ernesto Silva and Senator Ivan Moreira resigned as president and vice president of the UDI, respectively, becoming the first political casualties of a campaign finance scandal. Ivan Moreira has admitted receiving "irregular" financing for his campaign.

Also, on March 11, 2015, SQM disclosed that its Board of Directors would meet the next day to evaluate the request by the Public Prosecutor for delivery of certain information pertaining to the alleged bribery scandal. The next day, on March 12, 2015, the Company issued a press release disclosing that the Board resolved:

- To request an independent report with respect to the request by the Attorney General of Chile, Mr. Sabas Chahuán, in his letter dated March 6, 2015 and received by SQM on March 9, 2015, to voluntarily, and in accordance with relevant laws, provide certain information.

- To schedule another Extraordinary Session of the Board of Directors of SQM for Monday, March 16, 2015, in order to analyze the abovementioned report and to make a decision regarding the voluntary delivery of the requested information.

- The Board of Directors of SQM ratified its willingness to cooperate with the proceedings being led by the Public Prosecutor and confirmed that all of the requested information is ready to be delivered when appropriate.

- To send a letter to the Attorney General of Chile, Mr. Sabas Chahuán, informing him of the above in response to his letter dated March 6, 2015.

On March 16, 2015, the Company announced that it had turned over all of the information requested by the Public Prosecutor in the March 6, 2015 Letter to the Chilean Internal Revenue Service for the last six years, which the Company purported was the proper authority to review such information. Moreover, the Company also announced that the Board had agreed to terminate CEO Patricio Contesse effectively immediately. In the prior weeks, Contesse had attempted to block the Company's decision to turn over the documents.

As a result of these partial disclosures, SQM stock consistently traded downward, from a closing price of $26.17 per share on February 25, 2015, to close at $22.10 per share on March 17, 2015, a decline of 15.55% on unusually heavy trading volume during that period.

Finally, on March 18, 2015, SQM issued a press release indicating that the three representatives on its Board from Canadian stakeholder Potash Corporation, SQM Vice Chairman Wayne Brownlee, who also serves as the Chief Financial Officer of Potash Corporation, and directors Jose Maria Eyzaguirre and Alejandro Montero, had resigned the prior day.

As a result of this news, shares of SQM fell an additional $3.45 per share, or more than 15.6%, on extremely heavy volume, to close at $18.65 per share on March 18, 2015.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## III. ARGUMENT

### A. THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation of related cases is appropriate, where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay and overlap in adjudication:

> Where actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such order concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a). *See also* Manual for Complex Litigation (Third), § 20.123 (1995).

Moreover, the PSLRA also calls for consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed…." *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc*., 252 F.R.D. 188 (S.D.N.Y. 2008). Here, the Related Actions allege claims against the same defendants, stemming from the same set of misconduct. Accordingly, consolidation of the Related Actions is appropriate. *Lintz v. Agria Corp*., 2008 U.S. Dist. LEXIS 99846 (S.D.N.Y. Dec. 3, 2008) (consolidating actions that all alleged federal securities law violations arising out of defendants' alleged issuance of false and misleading financial statements).

### B. VILLELLA AND ROBINSON SHOULD BE APPOINTED LEAD PLAINTIFF

Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of a lead plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Villella and Robinson satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

#### 1. Villella and Robinson are Willing to Serve as a Class Representative

On March 19, 2015, counsel in the first filed action caused a notice (the "Notice") to be published over *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against the defendants herein, and advised

investors of SQM securities that until May 18, 2015, to file a motion to be appointed as Lead Plaintiff. *See* Declaration of Jeremy A. Lieberman in Support of the Motion by Sam and Megan Villella and Leroy Robinson for Consolidation, Appointment as Lead Plaintiff, and Approval of Lead Counsel ("Lieberman Decl."), Ex. A.

Villella and Robinson have filed the instant motion pursuant to the Notice, and have attached Certifications attesting that they are willing to serve as a representative for the Class and provide testimony at deposition and trial, if necessary. *See* Lieberman Decl. Ex. B. Accordingly, Villella and Robinson satisfy the first requirement to serve as Lead Plaintiff for the Class.

**2. Villella and Robinson Have the "Largest Financial Interest"**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 394-395 (S.D.N.Y. 2008); *In re Donkenny, Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997).

As of the time of the filing of this motion, Villella and Robinson believe that they have the largest financial interest of any of the Lead Plaintiff movants based on the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. 1997) (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered).[2]

During the Class Period, (1) Villella and Robinson purchased 2,400 shares of SQM; (2) expended $70,948 on their purchases of SQM; (3) retained 1,400 of their SQM shares; and, (4)

[2] *See also In re Olsten Corp. Sec. Litig.*, 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998). *Accord In re Comverse Tech., Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007) (collectively, the "*Lax-Olsten"* factors.).

as a result of the revelations of the fraud, Villella and Robinson suffered a loss of $11,084. *See* Lieberman Decl. Ex. C. Because Villella and Robinson possess the largest financial interest in the outcome of this litigation, they may be presumed to be the "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). *See also Chilton v. Chiumento Group*, 365 Fed. App'x 298, 299 (2d Cir. 2010) (discussing qualifications for Lead Plaintiff presumption); *In re Bank of Am. Corp. Sec., Deriv. and ERISA Litig.*, 258 F.R.D. 260, 268 (S.D.N.Y. 2009).

**3. Villella and Robinson Otherwise Satisfy the Requirements of Rule 23 of the Federal Rules of Civil Procedure**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see also In re Elan Corp. Sec. Litig.*, No. 02 Civ. 865 (WK) (FM), 2002 U.S. Dist. LEXIS 23162, at *7 (S.D.N.Y. Dec. 3, 2002); *Albert Fadem Trust v. Citigroup Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *See Canson v. WebMD Health Corp.*, No. 11-cv-5382-JFK, 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc.*

*Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997); *Olsten*, 3 F. Supp. 2d at 296 (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where the named representative's claims are typical of the class' claims. *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-cv-10240-CM, 2007 WL 2230177, at *13 (S.D.N.Y. July 27, 2007) (nothing that "[t]ypicality does not require that the factual background of each named plaintiffs claim be identical to that of all class members.").

The claims of Villella and Robinson are typical of those of the Class. Villella and Robinson allege, as do all Class members, that defendants violated the Exchange Act and Securities Act by making what they knew or should have known were false or misleading statements of material facts concerning SQM, or omitted to state material facts necessary to make the statements they did make not misleading. Villella and Robinson, as did all members of the Class, purchased SQM shares during the Class Period at prices artificially inflated by defendants' misrepresentations or omissions and were damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." The class representative must also have sufficient interest in the outcome of the case to ensure vigorous advocacy. *See Xianglin Shi v. Sina Corp.*, No. 05-cv-2154-NRB, 2005 WL 1561438, at *3 (S.D.N.Y. July 1, 2005); *Ghodooshim v. Qiao Xing Mobile Commc'n Co., Ltd.*,

No. 12-cv-9264-JSR, 2013 WL 2314267 (S.D.N.Y. May 21, 2013); *Beck v. Maximus*, 457 F.3d at 296 (emphasizing that the adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

Villella and Robinson adequately represent the Class. There is no antagonism between Villella and Robinson's interests and those of the Class, and their losses demonstrate that they have a sufficient interest in the outcome of this litigation. Moreover, Villella and Robinson have retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action, and submit their choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

**4. Villella and Robinson Will Fairly and Adequately Represent the Interests of the Class and are Not Subject to Any Unique Defenses**

The presumption in favor of appointing Villella and Robinson as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interest of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(I).

Villella and Robinson's ability and desire to fairly and adequately represent the Class has been discussed above. Villella and Robinson are not aware of any unique defenses defendants could raise that would render them inadequate to represent the Class. Accordingly, Villella and Robinson should be appointed Lead Plaintiff for the Class.

### C. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C.§ 78u-4(a)(3)(B)(iii)(II)(aa). *See also Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008) (emphasizing that the PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.").

Here, Villella and Robinson have selected Pomerantz as Lead Counsel. Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in the firm's resume. *See* Lieberman Decl. Ex. D. As a result of the firm's extensive experience in litigation involving issues similar to those raised in this action, Villella and Robinson's counsel have the skill and knowledge which will enable them to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Villella and Robinson's selection of Counsel, the members of the Class will receive the best legal representation available.

## IV. CONCLUSION

For the foregoing reasons, Villella and Robinson respectfully requests the Court to issue an Order: (1) Consolidating the related actions; (2) appointing Villella and Robinson as Lead Plaintiff; (3) approving Pomerantz as Lead Counsel; and, (4) granting such other relief as the Court may deem to be just and proper.

Dated: May 18, 2015
New York, New York

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
C. Dov Berger
600 Third Avenue - 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile: 212-661-8665

and

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South LaSalle Street - Suite 3505
Chicago, Illinois 60603
Telephone: 312-377-1181
Facsimile: 312-377-1184

***Counsel for Movant and Proposed Lead Counsel for the Class***