UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEGAN VILLELLA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHEMICAL & MINING CO. OF CHILE INC., PATRICIO CONTESSE, PATRICIO DE SOLMINIHAC, and RICARDO RAMOS,<br><br>Defendants. | No. 1:15-cv-02106-ER<br><br>ECF Case |
| LYNN MOLINARO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHEMICAL AND MINING COMPANY OF CHILE INC. PATRICIO CONTESSE GONZALEZ, PATRICIO DE SOLMINIHAC and RICARDO RAMOS,<br><br>Defendants. | No. 1:15-cv-02884-ER<br><br>ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF MARTY SHOLTIS' MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

Marty Sholtis ("Sholtis" or "Movant") respectfully submits this memorandum of law in support of his motion to consolidate the above-captioned cases and for appointment as lead plaintiff and approval of lead counsel pursuant to Section 27 of the Securities Act of 1933 and Section 21D of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995, on behalf of a putative Class of purchasers of Chemical & Mining Co. of Chile, Inc. securities.

Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the person or group with the largest financial interest in the relief sought by the Class who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure is presumed to be the "most adequate plaintiff" – the plaintiff most capable of adequately representing the interests of Class members. The PSLRA provides that the Court shall appoint the most adequate plaintiff as lead plaintiff. Sholtis believes that he is the "most adequate plaintiff" as defined by the PSLRA, and should be appointed lead plaintiff based on his financial losses suffered as a result of Defendants' wrongful conduct as alleged in this action. Moreover, Sholtis satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure, as his claims are typical of other Class members' claims, and he will fairly and adequately represent the interests of the Class. In addition, Movant's selection of Glancy Prongay & Murray LLP as lead counsel should be approved because the firm has substantial expertise in securities class action litigation and the experience and resources to efficiently prosecute this action.

## I.   FACTUAL BACKGROUND

This is a securities class action on behalf of a putative Class comprising purchasers of the American Depositary Receipts ("ADRs") of Chemical & Mining Co. of Chile, Inc. ("SQM" or the "Company") between June 30, 2010 and March 17, 2015, inclusive (the "Class Period").

301420.1

Plaintiffs seek to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

SQM purports to be the world's largest producer of potassium nitrate, iodine and lithium chemicals. The Company produces specialty plant nutrients, iodine and iodine derivatives, lithium and lithium derivatives, potassium chloride, potassium sulfate and certain industrial chemicals (including industrial nitrates and solar salt). SQM products are sold in more than 115 countries through its worldwide distribution network, with 88% of sales in 2013 derived from countries outside Chile. SQM products are mainly derived from mineral deposits found in northern Chile. SQM Series A and Series B common shares are listed on the Santiago Stock Exchange, while Series B ADR have been listed on the NYSE since 1993, under the ticker symbol "SQM."

The Related Actions allege that during the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) money from SQM was channeled illicitly to electoral campaigns for the Independent Democratic Union ("UDI"), Chile's largest conservative party; (2) the Company lacked adequate internal controls over financial reporting; and (3) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

On February 26, 2015, SQM issued the first of a series of disclosures, which, for the first time, publicly linked the Company to the ongoing UDI contribution scandal and ultimately culminated in the termination of the Chief Executive Officer and resignation of three SQM Board members. The Company disclosed in a press release that, at the request of the Chairman of

the Board of SQM, an extraordinary Board meeting was held to analyze the ongoing political scandal in and the Attorney General's investigation.

On March 16, 2015, the Company announced the resignation of Defendant Contesse as SQM CEO. On March 18, 2015, the Company published a press release informing investors that three board members had resigned effective immediately, and issued the following statement regarding recent events:

> The Board of Directors promptly initiated internal investigations and created a Special Committee to complete an extensive and independent report, and instructed the committee to utilize all resources it deems appropriate. The Committee has contracted independent consultants from both Chile and the United States of America, and will continue to provide information to the regulatory authorities as necessary.
>
> The Board also agreed to terminate the employment contract of Patricio Contesse G. and voluntarily provided the Chilean Internal Revenue Service (Servicio de Impuestos Internos) with all of the information that was requested by the Public Prosecutor and will continue to do the activities necessary to reach a prompt conclusion.

Following this news, the price of SQM shares dropped approximately 16%, or $3.45 per share, on volume of over 11 million shares, to a closing price of $18.65 per share on March 18, 2015.

On March 25, 2015, the Company announced that it had identified approximately $11 million in questionable payments from the office of its recently fired CEO, Defendant Contesse. The Company stated in relevant part, "We identified to SII (internal revenue service) approximately $11 million in payments that originated from the office of our former CEO during the six-year period from 2009 -2014 that may not meet the requirement to count as tax expenses under the Chilean tax code because of insufficient supporting documentation." On this news the Company's shares fell a further $1.83 per share, or nearly 10%, over three trading periods to close on March 27, 2015 at $17.95 per share.

## II.   PROCEDURAL HISTORY

Plaintiff Megan Villella ("Villella") commenced the first of the above-captioned cases against SQM on March 19, 2015. That same day, counsel for Villella published a notice on *Globe Newswire* announcing that a securities class action had been initiated against the defendants herein.

In addition and subsequent to the *Villella* complaint, one other related action was filed in this District alleging similar allegations against the same defendants as the *Villella* complaint: *Molinaro v. Chemical & Mining Co. of Chile, Inc., et al.*, No. 1:15-cv-02884-ER (filed April 14, 2015) (*Villella* and *Molinaro* are collectively referred to as the "Related Actions").

## III.   ARGUMENT

### A.   The Related Actions Should Be Consolidated

Consolidation pursuant to Federal Rule of Civil Procedure Rule 42(a) is proper when actions involve common questions of law and fact. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).

Each of the Related Actions presents similar factual and legal issues, as they all involve the same subject matter and present the same legal issues. Each action names the same defendants, each alleges violations of the Exchange Act, each presents the same or similar theories for recovery, and each is based on the same allegedly wrongful course of conduct. Because these actions arise from the same facts and circumstances and involve the same subject matter, consolidation of these cases under Federal Rule of Civil Procedure 42(a) is appropriate. *See Pipefitters Local No. 636 Defined Ben. Plan v. Bank of America Corp.*, 275 F.R.D. 187, 192 (S.D.N.Y. 2011) (Consolidation is appropriate "if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy

served by consolidation.").

### B. Marty Sholtis Should Be Appointed Lead Plaintiff

The PSLRA provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. §78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" – *i.e.*, the plaintiff most capable of adequately representing the interests of the Class – is the class member that:

(aa) has either filed the complaint or made a motion in response to a notice. ..;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).

The presumption in favor of appointing a movant as lead plaintiff may be rebutted only upon proof "by a purported member of the plaintiff class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interest of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

As set forth below, Sholtis satisfies all of the PSLRA criteria and has complied with all of the PSLRA's requirements to be appointed lead plaintiff; Sholtis has, to the best of his knowledge, the largest financial interest in this litigation, and he meets the relevant requirements

of Federal Rule of Civil Procedure 23. In addition, Sholtis is not aware of any unique defenses defendants could raise against him that would render him inadequate to represent the Class. Accordingly, Sholtis respectfully submits that he should be appointed lead plaintiff. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008).

### 1. Sholtis Filed A Timely Motion

On March 19, 2015, pursuant to 15 U.S.C. 78u-4(a)(3)(A)(i), counsel for Villella published a notice of the pendency of plaintiff's case on *Globe Newswire* – a widely circulated national business-oriented wire service – announcing that a securities class action had been filed against defendants herein and advising purchasers of SQM securities that they had 60 days from the publication of the March 19, 2015 notice to file a motion to be appointed as lead plaintiff. *See* Declaration of Lesley F. Portnoy in Support of Marty Sholtis' Motion for Consolidation of Related Cases, Appointment as Lead Plaintiff and Approval of Lead Counsel ("Portnoy Decl.") at Exhibit ("Exh.") A; *Greebel v. FTP Software, Inc.*, 939 F.Supp. 57, 62-63 (D. Mass. 1996) (publication on a national wire service satisfies the PSLRA notice requirement).

Sholtis timely files this motion within the 60-day period following publication of the March 19, 2015 PSLRA notice, and submits herewith his sworn certification and attests he is willing to serve as representative of the Class and willing to provide testimony at deposition and trial, if necessary. *See* Portnoy Decl., Exh. B. By making a timely motion in response to a PSLRA notice, Sholtis satisfies the first PSLRA requirement to be appointed lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(aa).

### 2. Sholtis Has The Largest Financial Interest

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff…is the person or group of persons that…has the largest financial interest in the relief

sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii). At the time of this filing, Sholtis believes that he has the largest financial interest among Class members who filed timely applications for appointment as lead plaintiff and accordingly is presumed to be the "most adequate plaintiff."

Sholtis purchased SQM securities during the Class Period at prices alleged to be artificially inflated by Defendants' misstatements and omissions, and as a result suffered financial losses of over $6,300. *See* Portnoy Decl., Exh. C. To the best of his knowledge, Sholtis is not aware of any other Class member claiming larger financial losses that has filed a motion for appointment as lead plaintiff. Consequently, Sholtis believes that he has the "largest financial interest in the relief sought by the Class." Sholtis thus satisfies the second PSLRA requirement – the largest financial interest – to be appointed as lead plaintiff for the Class. *See Varghese,* 589 F. Supp. 2d at 396.

### 3. Sholtis Satisfies The Requirements Of Rule 23 Of The Federal Rules Of Civil Procedure

The PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff candidate otherwise satisfies the requirements of Rule 23, "typicality and adequacy of representation are the only provisions [of

Rule 23] relevant to the determination." *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Svcs. Group, Inc*. 269 F.R.D. 291, 296 (S.D.N.Y. 2010). At the lead plaintiff stage of the litigation, a movant need only make a preliminary showing that it satisfies Rule 23's typicality and adequacy requirements. *Id*. at 296-97 (*citing In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005); *Kuriakose v. Federal Home Loan Mortg. Co.*, No. 1:08–cv–7281 (JFK), 2008 WL 4974839, at *5 (S.D.N.Y. Nov. 24, 2008).

### a.   Sholtis' Claims Are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See Id.,* at *4. Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Sholtis' claims are typical of the claims asserted by the proposed Class. Like all members of the Class, Sholtis alleges that Defendants' material misstatements and omissions concerning SQM's business, operations, and financial prospects violated the federal securities laws. Sholtis, like all of the members of the Class, purchased SQM securities in reliance on Defendants' alleged misstatements and omissions and was damaged thereby. Accordingly, Sholtis' interests and claims are "typical" of the interests and claims of the Class.

### b.   Sholtis Is An Adequate Representative

"The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *City of Monroe*, 269 F.R.D. at 297.

Sholtis has demonstrated his adequacy by retaining competent and experienced counsel,

with the resources, and expertise to efficiently prosecute this action, and his financial losses ensure that he has sufficient incentive to ensure vigorous advocacy. *See* Portnoy Decl., Exh. C. Sholtis is not aware that any conflict exists between his claims and those asserted on behalf of the Class.

### C. The Court Should Approve Lead Plaintiff's Choice Of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to approval of the Court. *See* 15 U.S.C. §78u-4(a)(3)(B)(v); *In re Cendant Corp.*, 264 F.3d at 274. Thus, the Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). Here, Sholtis has retained Glancy Prongay & Murray LLP to pursue this litigation on his behalf, and will retain this firm as plaintiffs' lead counsel in the event he is appointed lead plaintiff. Glancy Prongay & Murray LLP possesses extensive experience in securities litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, as reflected by the firm's résumé attached to the Portnoy Decl. as Exh. D. Thus, the Court may be assured that, by granting the Movant's motion, the Class will receive the highest caliber of legal representation.

### III. CONCLUSION

For the foregoing reasons, Sholtis respectfully asks the Court to grant his motion and enter an Order (1) consolidating the above-captioned cases, (2) appointing Marty Sholtis as lead plaintiff, (3) approving his selection of Glancy Prongay & Murray LLP as lead counsel for the Class, and (4) granting such other relief as the Court may deem just and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
| DATED: May 18, 2015 | GLANCY PRONGAY & MURRAY LLP |

By:   *s/ Lesley F. Portnoy*
Thomas Kennedy (TK 9989)
Lesley F. Portnoy (LP-1941)
122 East 42nd Street, Suite 2920
New York, New York 10168
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
lportnoy@glancylaw.com

-and-

GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Proposed Lead Counsel*

**PROOF OF SERVICE BY ELECTRONIC POSTING PURSUANT TO SOUTHERN DISTRICT OF NEW YORK ECF AND LOCAL RULES AND BY MAIL ON ALL KNOWN NON-REGISTERED PARTIES**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.

On May 18, 2015, I served true and correct copies of **MEMORANDUM OF LAW IN SUPPORT OF MARTY SHOLTIS' MOTION FOR CONSOLIDATION OF RELATED CASES, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this May 18, 2015, at Los Angeles, California.

*s/ Lesley F. Portnoy*
Lesley F. Portnoy

# Mailing Information for a Case 1:15-cv-02106-ER

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Patrick Vincent Dahlstrom**
  pdahlstrom@pomlaw.com

- **Phillip C. Kim**
  pkim@rosenlegal.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,lpvega@pomlaw.com

- **Jason Allen Zweig**
  jasonz@hbsslaw.com,rebeccah@hbsslaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)