UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MEGAN VILLELLA, Individually and on Behalf of All Others Similarly Situated, | : : : : | Civil Action No. 1:15-cv-02106-ER-GWG (Consolidated) |
| Plaintiff, | : : | CLASS ACTION |
| vs. | : : : | LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR |
| CHEMICAL AND MINING COMPANY OF CHILE INC., et al., | : : : : | THE ISSUANCE OF LETTERS ROGATORY TO SUBPOENA FOREIGN THIRD PARTIES |
| Defendants. | : : | |

1350264_1

## I.  INTRODUCTION

This action is brought against the Chemical and Mining Company of Chile Inc. (a/k/a Sociedad Química y Minera de Chile S.A.) ("SQM," "Defendant" or the "Company") on behalf of all persons who purchased SQM American Depositary Shares ("ADS") traded on the New York Stock Exchange ("NYSE") between June 30, 2010 and March 18, 2015 (the "Class Period"). Court-appointed Lead Plaintiff the Council of the Borough of South Tyneside Acting in Its Capacity as the Administering Authority of the Tyne and Wear Pension Fund ("Lead Plaintiff") alleges that SQM violated §10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder by making materially false and misleading statements and omissions to investors regarding its compliance with applicable laws and codes, the effectiveness of its internal controls and the accuracy of its financial statements – all while concealing that the Company's then-Chief Executive Officer ("CEO"), Patricio Contesse ("Contesse"), was funneling money to politicians by authorizing SQM to pay phony invoices reflecting services never rendered.

Pursuant to Rule 28(b) of the Federal Rules of Civil Procedure and 28 U.S.C. §1781(b)(2), Lead Plaintiff respectfully submits this motion requesting that the Court issue letters rogatory for the purpose of issuing subpoenas to Wayne R. Brownlee ("Brownlee") and Nutrien Ltd. ("Nutrien"),[1] two Canadian third parties who possess material information that is highly relevant to the claims at issue in this action. The subpoenas seek certain relevant documents in Nutrien's and Brownlee's possession and testimony from Brownlee regarding the subject of the requests.[2]

---

[1]  On January 1, 2018, Potash Corporation of Saskatchewan Inc. ("Potash") merged with Agrium Inc. to form Nutrien Ltd.

[2]  Copies of the proposed subpoenas, with accompanying instructions to be issued by the Canadian court, are attached to the Declaration of John H. George in Support of Lead Plaintiff's Motion for the Issuance of Letters Rogatory to Subpoena Foreign Third Parties ("George Decl.") as Exhibit B.

- 1 -

1350264_1

Brownlee was a member of SQM's Board of Directors ("Board") until he resigned on March 18, 2015 because, according to a press release issued by Potash, he was "unable to ensure either that an appropriate investigation is conducted or that SQM collaborate effectively with the Public Prosecutor." *See* ¶36.[3] Brownlee was nominated to SQM's Board by Potash, a major SQM shareholder, and he was Chief Financial Officer ("CFO") of Potash and is presently CFO of Nutrien. *Id.* Brownlee and Nutrien (as successor to Potash) possess material information regarding SQM's knowledge about its compliance with applicable laws, codes and accounting standards, the effectiveness of its internal controls and the accuracy of its financial statements at the time that SQM made the actionable misstatements in this action. Accordingly, their testimony and documents are highly relevant to show SQM's mental state as well as other elements of Lead Plaintiff's claims.

## II.   FACTUAL BACKGROUND

During the Class Period, SQM made materially false and misleading statements and omissions to investors regarding its compliance with applicable laws and accounting standards, the effectiveness of its internal controls and the accuracy of its financial statements – all while concealing that the Company's then-CEO, Contesse, was funneling millions of dollars to Chilean politicians, political parties and politically-connected companies to gain influence across Chile's political spectrum, by authorizing SQM to pay phony invoices reflecting services never rendered. From 2008 to 2015, politicians and their intermediaries (often family members and companies connected to politicians and parties) submitted invoices for various fictitious services, which SQM paid, usually at the direction of Contesse. *E.g.*, ¶¶58, 63-64. As a result, SQM knew it was not in compliance with applicable laws and regulations, and knew or recklessly disregarded that it lacked

---

[3]   All "¶_" and "¶¶_" references are to the Corrected Consolidated Complaint for Violation of the Securities Laws (ECF No. 40) ("Complaint").

effective internal controls and that its financial statements were neither accurate nor in compliance with Chilean Generally Accepted Accounting Principles or International Financial Reporting Standards. ¶¶194-199.

In early 2015, media outlets in Chile began to report a connection between SQM and an investigation into another Chilean company, Empresas Penta S.A. (a/k/a Grupo Penta) ("Penta"), which was accused of illegally funneling money to politicians and political parties. ¶¶21-24. In response, on February 26, 2015, SQM convened an extraordinary Board meeting "to analyze the matters that have been divulged by the press in recent weeks and are the subject of ongoing public cases." ¶25. During the meeting, the Board established an Ad-Hoc Committee to conduct an investigation into the subject of the ongoing public cases. *Id.* Jose María Eyzaguirre ("Eyzaguirre"), one of the directors appointed by Potash, was selected to be a member of the Ad-Hoc Committee.[4] ¶9.

On March 6, 2015, Chile's Public Prosecutor (similar to the U.S. Attorney General) requested SQM voluntarily provide certain accounting documents from the Company. ¶26. On March 12, 2015, SQM's Board held another extraordinary meeting and made several resolutions, including that it would not immediately provide information in response to the Public Prosecutor's March 6, 2015 request, but would instead commission an independent report and determine how to respond after reviewing the report. ¶27. Eyzaguirre and Montero, who did not vote in favor of delaying a response to the Public Prosecutor, were both in favor of producing the requested information as soon as possible and voluntarily. ¶28. Accordingly, Eyzaguirre resigned from the recently-formed Ad-Hoc Committee. *Id.*

---

[4] In addition to Brownlee and Eyzaguirre, Potash appointed another director, Alejandro Montero ("Montero"), to SQM's Board.

On March 16, 2015, the Public Prosecutor issued a search warrant for documents related to SQM's alleged violations of Chilean laws criminalizing bribery, the use of false invoices and tax fraud. ¶¶29-30. The same day, the Board held another extraordinary meeting and terminated Contesse's employment as CEO. ¶32.

On March 18, 2015, Potash issued a press release announcing that Brownlee, Montero and Eyzaguirre had resigned in protest:

> Wayne Brownlee, Alejandro Montero and Jose María Eyzaguirre, the three directors who PotashCorp nominated to the SQM board, have resigned. The Chilean Public Prosecutor has made serious allegations of wrongdoing by SQM and its management. PotashCorp and its SQM board representatives have demanded an exhaustive, transparent and independent investigation by the company. SQM's board has not authorized a review which meets the standards we expect despite consistent efforts by our board representatives. Likewise our board representatives' emphatic requests that SQM fully and voluntarily cooperate with competent authorities, particularly in the case of the request by the Office of the Public Prosecutor for a voluntary delivery of information, have been rejected by a majority of the board.
>
> It has become clear that given our minority and dissident position on the board, we are unable to ensure either that an appropriate investigation is conducted or that SQM collaborate effectively with the Public Prosecutor. Accordingly, Wayne Brownlee, Alejandro Montero and Jose María Eyzaguirre have resigned from the SQM board effective immediately.

¶¶34, 36.

As the details about SQM's unlawful payments and the consequences associated with such payments became public, the price of SQM's ADS declined precipitously and investors in SQM, including Lead Plaintiff, suffered substantial financial losses. ¶¶201-219.

## III. ARGUMENT

### A. Legal Standard for Issuance of Letters Rogatory

"[T]he term letters rogatory denotes a formal request from a court in which an action is pending, to a foreign court to perform some judicial act." 22 C.F.R. §92.54. Letters rogatory may be used to serve process on an individual or corporation within a foreign jurisdiction or to take

evidence from a specific person within the foreign jurisdiction. *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 775 (S.D.N.Y. 2012). Rule 28(b) of the Federal Rules of Civil Procedure, which provides that a "letter of request . . . may be issued on appropriate terms after an application and notice of it," authorizes federal courts to issue letters rogatory that enable a U.S. litigant to obtain non-party discovery from a foreign person or entity. Fed. R. Civ. P. 28(b)(2). Title 28, Section 1781 of the U.S. Code similarly authorizes a federal court to issue letters rogatory. 28 U.S.C. §1781; *Lantheus*, 841 F. Supp. 2d at 775.

As with other discovery requests, courts apply the standards from Rule 26 of the Federal Rules of Civil Procedure to determine whether to grant a request for a letter rogatory. *Lantheus*, 841 F. Supp. 2d at 776; *Asis Internet Servs. v. Optin Glob., Inc.*, No. C-05-05124 JCS, 2007 U.S. Dist. LEXIS 50621, at *9 (N.D. Cal. June 29, 2007). A letter rogatory should therefore issue if it seeks "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see Lantheus*, 841 F. Supp. 2d at 776. "While not 'unlimited, relevance, for purposes of discovery, is an extremely broad concept.'" *Joseph v. Gnutti Carlo S.p.A.*, No. 15-cv-8910 (AJN), 2016 U.S. Dist. LEXIS 96721, at *3 (S.D.N.Y. July 25, 2016) (citation omitted) (granting motion for letters rogatory to take discovery in the United Kingdom). The party seeking discovery bears the burden of demonstrating relevance, "but '[o]nce relevance has been shown, it is up to the responding party to justify curtailing discovery.'" *Id.* (citation omitted and alteration in original).[5]

Courts in this district consistently grant requests to issue letters rogatory to take discovery in Canada. *See, e.g.*, *Lantheus*, 841 F. Supp. 2d at 776 (granting motion for the issuance of letters

---

[5] As set out in its Memorandum of Law in Support of Defendant's Motion for the Issuance of a Letter of Request, SQM agrees on the governing legal standards. *See* ECF No. 90 at 5.

- 5 -

rogatory to allow plaintiff to take third party discovery in Canada); *Netherby Ltd. v. Jones Apparel Grp., Inc.*, No. 04 Civ. 7028 (GEL), 2005 U.S. Dist. LEXIS 9769, at *1 (S.D.N.Y. May 18, 2005) (same).

### B. The Evidence Sought Is Directly Relevant to This Action

The letters rogatory should be issued because the proposed subpoenas request evidence directly relevant to material issues in this action. The subpoenas seek documents and testimony related to: (1) the three extraordinary Board meetings held in early 2015 (February 26, March 12 and March 16); (2) Brownlee's resignation from SQM's Board;[6] (3) former CEO Contesse's departure from SQM; and (4) investigations of SQM by Chilean and U.S. government agencies.

As discussed above, each of the three extraordinary Board meetings in early 2015 concerned issues central to Lead Plaintiff's allegations. The February 26, 2015 meeting addressed the media reports tying SQM to the investigation of Penta's illegal payments to politicians and the March 12, 2015 meeting concerned SQM's response to the Public Prosecutor's request for documents related to SQM's illicit payment scheme and involved a clear divide in the Board as to how to respond and how forthcoming to be (potentially demonstrating SQM's knowledge of its own violations). ¶¶25, 27-28. And it was during the March 16, 2015 meeting that the Board resolved to terminate Contesse following the Public Prosecutor's demand for documents and revelation of specific payments from SQM to politicians. ¶32.

Evidence related to Brownlee's, Montero's and Eyzaguirre's decisions to resign from SQM's Board also relates to the allegations in Lead Plaintiff's Complaint. Potash publicly announced that its directors had resigned because it was "unable to ensure either that an appropriate investigation is

---

[6] The subpoena addressed to Potash also seeks evidence related to Montero's and Eyzaguirre's resignation from SQM's Board.

1350264_1

conducted or that SQM collaborate effectively with the Public Prosecutor." ¶36. Clearly, the ways in which SQM was failing to cooperate and the details of its supposedly inappropriate investigation bear on Lead Plaintiff's allegation that SQM knew of its illegal payment scheme and insufficient controls and tried to hide the details from the public, including investors.

The evidence concerning Contesse's termination and the governmental investigations into illegal payments by SQM is unquestionably related to Lead Plaintiff's allegations. In fact, the governmental investigations and charges against SQM involve the same misconduct – SQM's payment scheme to funnel money to politicians and political parties – as Lead Plaintiff claims. Further, the Complaint alleges SQM misrepresented its compliance with the laws of various jurisdictions in which it operates and the various investigations and charges against SQM bear on the falsity of that claim and SQM's knowledge of the falsity. *See, e.g.*, ¶82.

In sum, the evidence sought by the requests is directly relevant to Lead Plaintiff's claims against SQM.

### C. The Issuance of Letters Rogatory Is Necessary Because Lead Plaintiff Has Been Unable to Obtain Discovery from Brownlee and Potash Without Judicial Intervention

The Court's issuance of the letters rogatory is also appropriate here because Lead Plaintiff first endeavored to obtain the requested information from Brownlee and Potash voluntarily, without seeking judicial intervention. George Decl. at ¶4; *see Lantheus*, 841 F. Supp. 2d at 793. On October 20, 2017, Lead Plaintiff sent the attached requests to Brownlee and Potash and requested they produce the requested documents without the need for letters rogatory and formal subpoenas. George Decl. at ¶4. On October 30, 2017, counsel for Brownlee and Potash responded to Lead Plaintiff's October 20, 2017 letter and refused to produce any documents absent a formal subpoena.

*Id.*; George Decl., Ex. C.  Thus, Lead Plaintiff's efforts to obtain relevant evidence without involving the Court have been unsuccessful.

## IV.  CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that this Court grant the Motion for the Issuance of Letters Rogatory to Subpoena Foreign Third Parties.

DATED:  April 20, 2018  ROBBINS GELLER RUDMAN
  & DOWD LLP
AELISH M. BAIG
MATTHEW S. MELAMED
JOHN H. GEORGE


               s/ John H. George
JOHN H. GEORGE

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
aelishb@rgrdlaw.com
mmelamed@rgrdlaw.com
jgeorge@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

>ROBBINS GELLER RUDMAN
>  & DOWD LLP
>SABRINA E. TIRABASSI
>120 East Palmetto Park Road, Suite 500
>Boca Raton, FL  33432
>Telephone:  561/750-3000
>561/750-3364 (fax)
>stirabassi@rgrdlaw.com
>
>Lead Counsel for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 20, 2018.

s/ John H. George
JOHN H. GEORGE

ROBBINS GELLER RUDMAN
    & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
E-mail: jgeorge@rgrdlaw.com

- 1 -

# Mailing Information for a Case 1:15-cv-02106-ER Villella et al v. Chemical & Mining Co. of Chile Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Aelish M Baig**
  aelishb@rgrdlaw.com,ptiffith@rgrdlaw.com,inavarrete@rgrdlaw.com

- **Brian E Cochran**
  bcochran@rgrdlaw.com

- **Patrick Vincent Dahlstrom**
  pdahlstrom@pomlaw.com

- **John H. George**
  jgeorge@rgrdlaw.com

- **Frank James Johnson**
  frankj@johnsonandweaver.com,paralegal@johnsonandweaver.com

- **Phillip C. Kim**
  pkim@rosenlegal.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com,jsnematzadeh@pomlaw.com

- **Grant Richard Mainland**
  gmainland@milbank.com,DMcCracken@milbank.com,TLevendosky@milbank.com,calipio@milbank.com

- **Matthew Melamed**
  mmelamed@rgrdlaw.com

- **Lesley Frank Portnoy**
  LPortnoy@glancylaw.com,info@glancylaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,aelishb@rgrdlaw.com,mmelamed@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Gerald H. Silk**
  jerry@blbglaw.com,errol.hall@blbglaw.com,ross@blbglaw.com

- **Sabrina Elsa Tirabassi**
  stirabassi@rgrdlaw.com,evanyi@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **David C. Walton**
  davew@rgrdlaw.com

- **Jason Allen Zweig**
  jasonz@hbsslaw.com,chavayh@hbsslaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Scott          Alexander Edelman
Milbank, Tweed, Hadley & McCloy LLP (NYC)
1 Chase Manhattan Plaza
New York, NY 10005
```

**Richard Gielata**
,