# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MEGAN VILLELLA, Individually and on Behalf of All Others Similarly Situated, | : Civil Action No. 1:15-cv-02106-ER-GWG<br>: (Consolidated)<br>: |
| Plaintiff, | : CLASS ACTION<br>: |
| vs. | : LETTERS ROGATORY REQUESTING<br>: JUDICIAL ASSISTANCE FROM THE |
| CHEMICAL AND MINING COMPANY OF CHILE INC., et al., | : COURT OF QUEEN'S BENCH<br>: SASKATCHEWAN<br>: |
| Defendants. | : |

| | |
|---|---|
| SENDER: | The Honorable Edgardo Ramos, U.S. District Judge<br>Southern District of New York<br>Thurgood Marshall United States Courthouse<br>40 Foley Square, Courtroom 619<br>New York, New York 10007<br>United States of America |
| AUTHORITY OF THE REQUESTED STATE: | Court of Queen's Bench Saskatchewan<br>Saskatoon Courthouse<br>520 Spadina Crescent East<br>Saskatoon, SK Canada<br>S7K 3G7<br>Phone:  (306) 933-5135<br>Fax:  (306) 975-4818 |
| PERSON TO WHOM THE EXECUTED REQUEST IS TO BE RETURNED: | Aelish M. Baig<br>Robbins Geller Rudman & Dowd LLP<br>One Montgomery Street, Suite 1800<br>San Francisco, California 94104<br>United States of America<br>Phone:  (415) 288-4545<br>Fax:  (415) 288-4534<br>aelishb@rgrdlaw.com |

The United States District Court for the Southern District of New York (the "Court") presents its compliments to the Court of Queen's Bench Saskatchewan and requests international judicial assistance to obtain ~~material~~ relevant and necessary evidence to be used in the civil proceeding before this Court in the above-captioned matter, which is a putative class action alleging violations of the United States securities laws.

Pursuant to the *Canada Evidence Act*, R.S.C. 1985, c. C-5, *The Evidence Act*, ch. E-11.2 and *The Queen's Bench Rules*, this Court respectfully requests the assistance described herein as necessary to further the interests of justice.  The assistance requested is that the Saskatchewan

Court of Queen's Bench compel Wayne R. Brownlee ("Brownlee") and Nutrien Ltd. ("Nutrien")[1] to produce documents and give testimony <ins>in response to inquiry from both Lead Plaintiff and Defendant</ins> in compliance with the third-party subpoenas (the "Subpoenas") annexed to the Declaration of John H. George in Support of Lead Plaintiff's Motion for the Issuance of Letters Rogatory to Subpoena Foreign Third Parties ("George Decl.") as Exhibit B.[2]  Brownlee and Nutrien are located in Saskatchewan and have refused to comply without judicial intervention. George Decl., Ex. C.

This Court has reviewed the Subpoenas, and determined that the requests are enumerated with particularity, are ~~material~~ <ins>relevant</ins> to the facts at issue in this action and cannot be obtained without the assistance of the Saskatchewan Court of Queen's Bench.

**I.     NAMES AND ADDRESSES OF THE PERSONS OR ENTITIES**

Nutrien Ltd.
122 1st Avenue South, Suite 500
Saskatoon, SK Canada
S7K 7G3

Wayne R. Brownlee
631 Trent Crescent
Saskatoon, SK Canada
S7H 4T5

**A.     Plaintiff**

Lead Plaintiff the Council of the Borough of South Tyneside Acting in Its Capacity as the Administering Authority of the Tyne and Wear Pension Fund ("Lead Plaintiff"), represents a putative class of those who purchased Chemical and Mining Company of Chile Inc. (a/k/a

---

[1]    On January 1, 2018, Potash Corporation of Saskatchewan, Inc. ("Potash") merged with Agrium to form Nutrien Ltd.

[2]    <ins>Under the laws of the United States, a party has a privilege to refuse to give relevant evidence if the evidence discloses a confidential communication between that party and an attorney for that party that was made for the purpose of obtaining legal advice, and/or if that relevant evidence was prepared in anticipation of litigation, and which privilege has not been waived explicitly or implicitly.</ins>

Sociedad Química y Minera de Chile S.A.) ("SQM" or the "Company") American Depositary Shares ("ADS") traded on the New York Stock Exchange ("NYSE") between June 30, 2010 and March 18, 2015 (the "Class Period").  Lead Plaintiff may be contacted through its Counsel at the address listed below:

> ROBBINS GELLER RUDMAN & DOWD LLP
> Aelish M. Baig
> One Montgomery Street, Suite 1800
> San Francisco, California 94104
> United States of America
> Phone:  (415) 288-4545
> Fax:  (415) 288-4534
> aelishb@rgrdlaw.com

**B.     Defendant**

The defendant in this action is SQM.  Defendant may be contacted through its counsel at the address listed below:

> MILBANK, TWEED, HADLEY & McCLOY LLP
> Scott A. Edelman
> Grant R. Mainland
> 28 Liberty Street
> New York, New York 10005
> United States of America
> Phone:  (212) 530-5000
> Fax:  (212) 822-5219
> sedelman@milbank.com
> gmainland@milbank.com

**II.     NATURE OF THE PROCEEDINGS**

This putative securities class action lawsuit, which is being actively litigated in this Court, asserts claims for securities fraud under the U.S. Federal Securities Laws, particularly §10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.  This action arises out of a series of allegedly materially false and misleading statements made by SQM concerning its compliance with the laws and regulations of the jurisdictions in which it operates, the effectiveness of SQM's internal controls, the accuracy of its financial results and its compliance

with applicable accounting standards. Lead Plaintiff alleges that when SQM's statements were revealed to be false and misleading, the price of SQM ADS precipitously declined and investors, such as Lead Plaintiff, suffered substantial damages.

## III. SUMMARY OF ALLEGATIONS

The following allegations come from Lead Plaintiff's Corrected Consolidated Complaint for Violation of the Securities Laws (ECF No. 40) ("Complaint"), filed on February 9, 2016.

For over five years, SQM, one of Chile's largest companies, funneled millions of dollars to politicians, political parties and politically-connected companies, in order to gain influence across Chile's political spectrum. To carry out the scheme, politicians and their intermediaries (often family members and companies connected to politicians and parties) submitted invoices for various fictitious services, which SQM paid, usually at the direction of its then-Chief Executive Officer ("CEO"), Patricio Contesse ("Contesse").

In early 2015, media outlets began to report that an investigation into another Chilean company, Empresas Penta S.A. (a/k/a Grupo Penta) ("Penta"), which was accused of illegally funneling money to politicians and political parties, had also uncovered potentially similar illegal activities by SQM. In response, on February 26, 2015, SQM convened an extraordinary Board of Directors ("Board") meeting "to analyze the matters that have been divulged by the press in recent weeks and are the subject of ongoing public cases." During the meeting, the Board established an Ad-Hoc Committee to conduct an investigation into the subject of the ongoing public cases. Jose María Eyzaguirre ("Eyzaguirre"), one of the directors appointed by Potash, was selected to be a member of the Ad-Hoc Committee.[3]

---

[3] In addition to Brownlee and Eyzaguirre, Potash appointed another director, Alejandro Montero ("Montero"), to SQM's Board.

On March 6, 2015, Chile's Public Prosecutor (similar to the U.S. Attorney General) requested SQM voluntarily provide certain accounting documents from the Company. On March 12, 2015, SQM's Board held another extraordinary meeting and made several resolutions, including that it would not immediately provide information in response to the Public Prosecutor's March 6, 2015 request, but would instead commission an independent report and determine how to respond after reviewing the report. Eyzaguirre and Montero, who did not vote in favor of delaying a response to the Public Prosecutor, were both in favor of voluntarily producing the requested information as soon as possible. Accordingly, Eyzaguirre resigned from the recently-formed Ad-Hoc Committee.

On March 16, 2015, the Public Prosecutor issued a search warrant demanding SQM's accounting books related to SQM's alleged violations of Chilean laws criminalizing bribery, the use of false invoices and tax fraud. The same day, the Board held another extraordinary meeting in which it terminated Contesse's employment as CEO.

On March 18, 2015, Potash issued a press release announcing that Brownlee, Montero and Eyzaguirre had resigned from the Board in protest:

> Wayne Brownlee, Alejandro Montero and Jose María Eyzaguirre, the three directors who PotashCorp nominated to the SQM board, have resigned. The Chilean Public Prosecutor has made serious allegations of wrongdoing by SQM and its management. PotashCorp and its SQM board representatives have demanded an exhaustive, transparent and independent investigation by the company. SQM's board has not authorized a review which meets the standards we expect despite consistent efforts by our board representatives. Likewise our board representatives' emphatic requests that SQM fully and voluntarily cooperate with competent authorities, particularly in the case of the request by the Office of the Public Prosecutor for a voluntary delivery of information, have been rejected by a majority of the board.
>
> It has become clear that given our minority and dissident position on the board, we are unable to ensure either that an appropriate investigation is conducted or that SQM collaborate effectively with the Public Prosecutor. Accordingly, Wayne Brownlee, Alejandro Montero and Jose María Eyzaguirre have resigned from the SQM board effective immediately.

As the details about SQM's unlawful payments became public, the price of SQM's ADS declined and investors in SQM, including Lead Plaintiff, allegedly suffered substantial financial losses.

## IV. THE EVIDENCE SOUGHT IS ~~MATERIAL~~ RELEVANT TO THIS ACTION AND CANNOT BE OBTAINED WITHOUT THE ASSISTANCE OF THE SASKATCHEWAN COURT

The Subpoenas seek documents related to: (1) the three extraordinary Board meetings held in early 2015 (February 26, March 12 and March 16); (2) Brownlee's resignation from SQM's Board; (3) former CEO Contesse's departure from SQM; and (4) investigations of SQM by Chilean and U.S. government agencies. The Subpoena addressed to Brownlee seeks testimony on the same topics. The Subpoena addressed to Nutrien (as successor to Potash) also seeks documents related to Montero's and Eyzaguirre's resignation from SQM's Board. The requested evidence is relevant to Lead Plaintiff's allegations against SQM.[4]

Each of the three extraordinary Board meetings in early 2015 concerned issues related to Lead Plaintiff's allegations. For example, the February 26, 2015 meeting addressed the media reports tying SQM to the investigation of Penta's illegal payments to politicians and the March 12, 2015 meeting concerned SQM's response to the Public Prosecutor's request for documents related to SQM's illicit payment scheme and involved a clear divide in the Board as to how to respond and how forthcoming to be. The March 16, 2015 meeting also concerns the issues present in Lead Plaintiff's case because at that meeting the Board resolved to terminate Contesse following the Public Prosecutor's demand for documents and revelation of specific payments from SQM to politicians.

---

[4] The factual assertions set forth in this Section consist of Lead Plaintiff's allegations, and do not represent the factual findings of the Court.

Evidence related to Brownlee's, Montero's and Eyzaguirre's decisions to resign from SQM's Board also relates to the allegations in Lead Plaintiff's Complaint. Potash publicly announced that its directors had resigned because it was "unable to ensure either that an appropriate investigation is conducted or that SQM collaborate effectively with the Public Prosecutor." The ways in which SQM was failing to cooperate and the details of its supposedly inappropriate investigation bear on Lead Plaintiff's allegation that SQM knew of its illegal payment scheme and insufficient controls and tried to hide the details from the public, including investors.

The evidence concerning Contesse's termination and the governmental investigations into illegal payments by SQM is also related to Lead Plaintiff's allegations. The governmental investigations and charges against SQM involve substantially similar misconduct - SQM's payment scheme to funnel money to politicians and political parties - as Lead Plaintiff claims. Further, the Complaint alleges SQM misrepresented its compliance with the laws of various jurisdictions in which it operates and the various investigations and charges against SQM bear on the falsity of that claim and SQM's knowledge of the falsity.

Brownlee and Potash have refused to voluntarily provide the requested evidence and cannot be compelled to testify or produce documents by this Court as they are not located in the United States.

In sum, the evidence sought by the requests is relevant to Lead Plaintiff's claim against SQM and cannot be obtained without the assistance of the Saskatchewan Court of Queen's Bench.

## V.   RECIPROCITY

This Court is willing to provide reciprocity in judicial assistance to the Saskatchewan Court of Queen's Bench.

**VI.     REIMBURSEMENT FOR COSTS**

The fees and costs incurred by service of the Subpoenas upon the Foreign Third Parties will be borne by Lead Plaintiff in care of Counsel at the address below:

ROBBINS GELLER RUDMAN & DOWD LLP
Aelish M. Baig
One Montgomery Street, Suite 1800
San Francisco, California 94104
United States of America
Phone:  (415) 288-4545
Fax:  (415) 288-4534
aelishb@rgrdlaw.com

DATED: _____

                                          THE HONORABLE EDGARDO RAMOS
                                          UNITED STATES DISTRICT JUDGE