UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MEGAN VILLELLA, individually and on behalf of all others similarly situated,

Plaintiff,

-against-

CHEMICAL & MINING CO. OF CHILE INC.,

Defendant.

**OPINION & ORDER**

15 Civ. 2106 (ER)

Ramos, D.J.:

This is a putative federal securities class action brought on behalf of all individuals who purchased American Depository Shares in Defendant Chemical & Mining Company of Chile Inc. (also known as Sociedad Química y Minera de Chile S.A. ("SQM")) on the New York Stock Exchange between June 30, 2010, and June 18, 2015. Doc. 40. Lead Plaintiff, the Council of the Borough of South Tyneside Acting in Its Capacity as the Administering Authority of the Tyne and Wear Pension Fund (the "Fund"), alleges that SQM violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, promulgated thereunder. *Id.*

Before the Court is the Fund's unopposed motion requesting that the Court issue two letters of request, also known as "letters rogatory," for judicial assistance from a Canadian court in aid of discovery from Canadian third parties, pursuant to both Chapter I of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention"), 23 U.S.T. 2555, T.I.A.S. 7444, *reprinted in* 28 U.S.C. § 1781, and Rule 28(b) of the Federal Rules of Civil Procedure. Docs. 110–12. For the reasons set forth below, the Fund's motion is GRANTED.

**I. BACKGROUND**

The Court assumes familiarity with the facts and procedural posture of this action—previously set forth in both the Court's March 2017 Opinion & Order, Doc. 67, and the Court's June 2018 Opinion & Order, Doc. 118—and therefore recites only those facts necessary to the disposition of the instant motion.

In short, the Fund alleges that SQM made several public filings with the SEC and issued press releases that contained materially false and/or misleading disclosures because the documents failed to disclose that: (i) money from SQM was illegally channeled to bribe Chilean politicians and political parties, (ii) SQM had filed fictitious tax receipts in order to conceal these bribe payments, (iii) SQM lacked adequate internal controls over its financial reporting, and (iv) as a result, SQM's financial statements were materially false and misleading and not prepared in accordance with applicable accounting principles. The parties commenced discovery in May 2017, *see* Doc. 71 at 1, and, pursuant to the operative scheduling order, the deadline for fact discovery is March 3, 2019, *see* Doc. 123.

In this motion, the Fund asks the Court to issue two letters rogatory to the Saskatchewan Court of Queen's Bench in Canada: (1) to compel Wayne R. Brownlee ("Brownlee") to testify and produce documentary evidence; and (2) to compel Nutrien Ltd. ("Nutrien"), as successor to Potash Corporation of Saskatchewan, Inc. ("Potash"), to produce documentary evidence, all in accordance with the third-party subpoenas attached to the Fund's moving papers. Doc. 112 ¶ 5. According to the Fund, Brownlee and Nutrien are Canadian third parties located in

Saskatchewan, Canada, and both parties possess material information "highly relevant" to the claims at issue in this action. *Id.* ¶ 3.

The Fund has attached proposed letters of request to its moving papers. The letters, as well as the Fund's moving papers, set forth the alleged relevance of the discovery sought. In short, the Fund claims that Brownlee was a member of SQM's Board of Directors until he resigned on March 18, 2015, allegedly because he was unable to ensure either that an appropriate investigation was conducted or that SQM would collaborate effectively with Chile's Public Prosecutor, an investigator analogous to the U.S. Attorney General. Doc. 111 at 2 (citing Doc. 40 ¶ 36). According to the Fund, Brownlee was nominated to SQM's Board of Directors by Potash, one of SQM's major shareholders. *Id.* Brownlee reportedly was the Chief Financial Officer of Potash and is currently the Chief Financial Officer of Nutrien, Potash's successor company. *Id.* The Fund believes that Brownlee and Nutrien "possess material information regarding SQM's knowledge about its compliance with applicable laws, codes and accounting standards, the effectiveness of its internal controls and the accuracy of its financial statements at the time that SQM made the actionable misstatements in this action." *Id.*

The Fund maintains that it has attempted to obtain the requested discovery from Brownlee and Nutrien's predecessor without resort to formal subpoenas, but counsel for both Brownlee and Nutrien has informed the Fund that they would not respond to any discovery requests absent formal subpoenas. *Id.* ¶ 4.

## II. LEGAL STANDARD

"The term 'letters rogatory' is synonymous with the term 'letter[s] of request.'" *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 775 n.5 (S.D.N.Y. 2012). Generally speaking, a letter of request is "[a] document issued by one court to a foreign court,

3

requesting that the foreign court (1) take evidence from a specific person within the foreign jurisdiction or serve process on an individual or corporation within the foreign jurisdiction and (2) return the testimony or proof of service for use in a pending case." *Letter of request*, Black Law's Dictionary (10th ed. 2014).

Pursuant to the Hague Convention and federal law, United States courts may "request the competent authority of another Contracting State, by means of a [l]etter of [r]equest, to obtain evidence, or to perform some other judicial act." Hague Convention ch. I, art. 1, *opened for signature* Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444, (entered into force with respect to the United States of America Oct. 7, 1972), *reprinted in* 28 U.S.C § 1781(b)(2); *see also id.* art. 42 (showing United States and Canada are Contracting States); Fed. R. Civ. P. 28(b) (permitting federal courts to issue letters of request to foreign countries); *cf. United States v. Al Fawwaz*, No. S7 98 CRIM. 1023 (LAK), 2014 WL 627083, at *2 (S.D.N.Y. Feb. 18, 2014) ("District courts have inherent authority to issue [letters of request].") (internal quotation marks omitted) (collecting cases).

Obtaining evidence includes deposing non-party witnesses in a foreign country. *See Elliott Assocs. v. Republic of Peru*, No. 96 Civ. 7916 (RWS), 1997 WL 436493, at *2 (S.D.N.Y. Aug. 1, 1997); Fed. R. Civ. P. 28(b) (providing that "[a] deposition may be taken in a foreign country . . . under a letter of request, whether or not captioned a "letter rogatory"). The decision to issue letters of request is an exercise of the Court's discretion. *Blagman v. Apple, Inc.*, No. 12 Civ. 5453 (JCF), 2014 WL 1285496, *4 (Mar. 31, 2014) (collecting cases); *see also* 8 Charles Alan Wright et al., *Federal Practice & Procedure* § 2005.1 (3d ed. 2010) ("A court should make

use of the Convention procedures whenever it is determined on a case–by–case basis that their use will facilitate discovery.").

In determining whether to issue a letter of request, "courts apply the discovery principles contained in Federal Rule of Civil Procedure 26." *Joseph v. Gnutti Carlo S.p.A.*, No. 15 Civ. 8910 (AJN), 2016 WL 4083433, at *1 (S.D.N.Y. July 25, 2016) (brackets omitted) (quoting *Lantheus*, 841 F. Supp. 2d at 776). Such principles typically include consideration of whether evidence sought by the movant is material or may lead to the discovery of material evidence, the breadth of evidence sought, and the availability of such evidence from alternative sources. *See, e.g.*, *Lantheus*, 841 F. Supp. 2d at 776–77. Moreover, as shown by the language found in Rule 26,[1] "[w]hile not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Gnutti Carlo S.p.A.*, 2016 WL 4083433, at *1 (internal quotation marks omitted); *see also* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").

Given the broad nature of relevant material, the party seeking application of Hague Convention procedures bears the burden of persuasion, *see Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 435 (E.D.N.Y. 2008), but that burden is not heavy.

## III. DISCUSSION

In this case, SQM concedes the general relevance of discovery from Nutrien and Brownlee and, therefore, does not oppose the Fund's request for issuance of the letters rogatory

---

[1] Pursuant to Rule 26, "unless otherwise limited by court order," the scope of discovery includes:

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

5

to aid in such discovery. However, SQM asks this Court to modify the proposed letters in five ways.

*First*, SQM asks that the proposed letters "be modified to expressly address SQM's right to object to—and prevent—the disclosure of . . . privileged information" between SQM and its lawyers that may be in the possession of Nutrien or Brownlee. Doc. 114 at 2 (first citing *Upjohn Co. v. United States*, 449 U.S. 383, 390–95 (1981); then citing *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975)).

*Second*, SQM asks that the proposed letters be modified to expressly acknowledge its right to question any witness appearing pursuant to the letters. *Id.* (citing, e.g., *F.C.C. v. Mizuho Medy Co. Ltd.*, 257 F.R.D. 679, 682 (S.D. Cal. 2009)); s*ee also Pegoraro v. Marrero*, No. 10 Civ. 51 (KNF), 2012 WL 1948887, at *6 (May 29, 2012).

*Third*, SQM asks the Court to replace the letters' references to "materiality" with references to "relevance." Doc. 114 at 3. In SQM's view, such substitution would better reflect the standard governing the issuance of letters rogatory—i.e., relevance under Rule 26 of the Federal Rules of Civil Procedure. *Id.*; s*ee also supra* Part II.

*Fourth*, SQM asks that the Court insert a footnote in the letters that make clear that the factual assertions contained therein are the Fund's allegations, not the Court's findings of fact. Doc. 114 at 3.

*Fifth*, and finally, SQM contends that "the time period for which discovery is sought [from Nutrien and Brownlee] appears substantially overbroad relative to the topics of the

proposed discovery." *Id.* at 3–4. SQM therefore asks the Court to consider whether the time period is justified. *Id.*

The modifications SQM proposes are reflected in a redlined version of the Fund's proposed letters of request. The Fund has not responded to SQM's proposed modifications.

After careful review, the Court concludes that the sought-after discovery from Nutrien and Brownlee is undeniably relevant to the prosecution of this action; may prove material to the prosecution of this action or lead to material evidence; and is proportional to the needs of this case, given the amount of money at stake and the information sought. Accordingly, the Funds' request for issuance of letters rogatory to aid in discovery is granted.[2]

In addition, the Court finds SQM's first four modifications to the proposed letters reasonable under the circumstances and will thus adopt them as provided. However, the Court declines at this time to limit the temporal scope of discovery from that which the Fund proposed.

## IV. CONCLUSION

For the reasons aforementioned, the Fund's motion for issuance of letters of request is GRANTED. The Fund is hereby ORDERED to resubmit its proposed letters of request, revised only to include the modifications approved by the Court herein, within seven calendar days of the filing of this Opinion & Order. The Clerk of Court is respectfully directed to terminate the motion, Doc. 110.

It is SO ORDERED.

Dated: January 11, 2019
New York, New York

Edgardo Ramos, U.S.D.J.

---

[2] The Court notes that it previously granted SQM's request to issue a letter of request to authorities in the United Kingdom. See Doc. 118.

7