UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————— x

MEGAN VILLELLA, Individually and on
Behalf of All Others Similarly Situated,

                          Plaintiff,

      vs.

CHEMICAL AND MINING COMPANY OF
CHILE INC., et al.,

                     Defendants.

————————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:15-cv-02106-ER-GWG
(Consolidated)

CLASS ACTION

LEAD PLAINTIFF'S MEMORANDUM OF
LAW IN SUPPORT OF UNOPPOSED
MOTION FOR (I) PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT; AND (II) APPROVAL OF
NOTICE TO THE CLASS

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ....................................................................1

II.    HISTORY OF THE LITIGATION ...............................................................3

III.    SETTLEMENT NEGOTIATIONS ..............................................................7

IV.    SETTLEMENT TERMS ...............................................................................7

V.    PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW LEAD
PLAINTIFF TO NOTIFY THE CLASS ............................................................9

    A.    The Rule 23(e)(2) Factors Are Satisfied ...............................................11

        1.    Lead Plaintiff and Lead Counsel Have Adequately Represented the
Class..................................................................................................11

        2.    The Proposed Settlement Is the Result of Good Faith, Arm's-
Length Negotiations...........................................................................12

        3.    The Relief Provided by the Settlement Is Adequate When Weighed
Against the Risks of Litigation .................................................13

        4.    The Proposed Method for Distributing Relief Is Effective.......................14

        5.    Lead Counsel's Fee and Expense Request Is Fair and Reasonable ...........15

        6.    All Class Members Are Treated Equitably Relative to One Another........16

    B.    The Proposed Settlement Meets the *Grinnell* Factors ...........................................17

VI.    NOTICE TO THE CLASS SHOULD BE APPROVED...................................................19

VII.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS ...............................................20

VIII.    CONCLUSION...............................................................................................21

# TABLE OF AUTHORITIES

**Page**

## CASES

*Christine Asia Co., Ltd. v. Yun Ma,*
  No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534
  (S.D.N.Y. Oct. 16, 2019) ........................................................................................18

*City of Providence v. Aeropostale, Inc.,*
  No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494
  (S.D.N.Y. May 9, 2014),
  *aff'd sub nom. Arbuthnot v. Pierson,*
  607 F. App'x 73 (2d Cir. 2015) ................................................................................13

*D'Amato v. Deutsche Bank,*
  236 F.3d 78 (2d Cir. 2001)................................................................................12, 18

*Deangelis v. Corzine,*
  151 F. Supp. 3d 356 (S.D.N.Y. 2015)........................................................................9

*Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974)........................................................................10, 17, 18

*Dornberger v. Metro. Life Ins. Co.,*
  203 F.R.D. 118 (S.D.N.Y. 2001) ..............................................................................16

*Dover v. Briptish Airways, PLC (UK),*
  No. 12 CV 5567 (RJD) (CLP), 2018 U.S. Dist. LEXIS 174513
  (E.D.N.Y. Oct. 9, 2018)..............................................................................................9

*In re "Agent Orange" Prod. Liab. Litig.,*
  597 F. Supp. 740 (E.D.N.Y. 1984),
  *aff'd,* 818 F.2d 145 (2d Cir. 1987) ..........................................................................18

*In re BHP Billiton Ltd. Sec. Litig.,*
  No. 1:16-cv-01445-NRB, 2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019),
  *aff'd sub nom. City of Birmingham Ret. & Relief Sys. v. Davis,*
  806 F. App'x 14 (2d Cir. Mar. 12, 2020)..................................................................16

*In re Delphi Corp. Sec., Derivative & ERISA Litig.,*
  248 F.R.D. 483 (E.D. Mich. 2008) ...........................................................................12

*In re Deutsche Telekom AG Sec. Litig.,*
  No. 00-CV-0475 (NRB), 2005 WL 7984326
  (S.D.N.Y. June 14, 2005)...........................................................................................16

**Page**

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .............................................................................11, 17, 19

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   No. 00 Civ. 6689(SAS), 2003 WL 22244676
   (S.D.N.Y. Sept. 29, 2003) ...........................................................................................19

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) ...................................................................................11

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ...................................................................................9

*In re Vitamin C Antitrust Litig.*,
   No. 06-MD-1738 (BMC)(JO), 2012 WL 5289514
   (E.D.N.Y. Oct. 23, 2012) .............................................................................................18

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06 Civ. 11515(WHP), 2008 WL 5110904
   (S.D.N.Y. Nov. 20, 2008) .............................................................................................20

*Landmen Partners Inc. v. Blackstone Grp. L.P.*,
   No. 08-cv-03601-HB-FM, 2013 WL 11330936
   (S.D.N.Y. Dec. 18, 2013) .............................................................................................16

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972).........................................................................................19

*Pantelyat v. Bank of Am., N.A.*,
   No. 16-cv-8964 (AJN), 2019 WL 402854
   (S.D.N.Y. Jan 31, 2019)...............................................................................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)...............................................................................9, 12, 20

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §10(b)...........................................................................................................................3
   § 20(a) ..........................................................................................................................3

**Page**

Federal Rules of Civil Procedure
Rule 23 ...................................................................................................................3, 20
Rule 23(c)(a) .................................................................................................................18
Rule 23(e) ..................................................................................................................9, 10
Rule 23(e)(1) ...................................................................................................................9
Rule 23(e)(1)(B) ............................................................................................................10
Rule 23(e)(2) ..........................................................................................................9, 10, 11
Rule 23(e)(2)(C)(i) ...................................................................................................17, 18
Rule 23(e)(2)(D) ............................................................................................................16
Rule 23(e)(3) ..................................................................................................................10
Rule 30(b)(6) ...................................................................................................................5

17 C.F.R.
§240.10b-5 .......................................................................................................................3

## SECONDARY AUTHORITIES

Janeen McIntosh & Svetlana Starykh,
*Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review*
(NERA Feb. 12, 2020) ...............................................................................................13

Class Representative the Council of the Borough of South Tyneside Acting in Its Capacity as the Administering Authority of the Tyne and Wear Pension Fund ("Lead Plaintiff"), on behalf of a certified Class[1] of similarly situated investors, respectfully submits this memorandum of law in support of its unopposed motion for: (i) preliminary approval of the proposed Settlement between Lead Plaintiff, on behalf of itself and the Class, and Defendant Chemical and Mining Company of Chile Inc. a/k/a Sociedad Química y Minera de Chile S.A. ("SQM" or the "Company," and together with Lead Plaintiff, the "Parties"); (ii) approval of the form and manner of the settlement notices to be provided to the Class; and (iii) the scheduling of a hearing (the "Final Approval Hearing" or "Settlement Hearing") on the final approval of the Settlement, proposed Plan of Allocation and Lead Counsel's application for an award of attorneys' fees and litigation expenses.  The Parties' agreed-upon proposed Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order") is filed herewith.

## I.     PRELIMINARY STATEMENT

The Parties have negotiated, at arm's length and with the assistance of an experienced and neutral mediator, a proposed settlement of all claims in this Litigation for $62.5 million in cash. This resolution, which represents a substantial recovery that falls well within the range of possible approval, involved more than five years of hard-fought litigation, including a motion to dismiss Lead Plaintiff's detailed and lengthy amended complaint; production and review of tens of thousands of

---

[1]     On September 24, 2019, the Court certified the following Class:

All persons who purchased or otherwise acquired SQM ADS traded on the NYSE between June 30, 2010 and March 18, 2015, inclusive (the "Class Period"). Excluded from the Class are: (i) SQM; (ii) any entity in which SQM has a controlling interest; (iii) officers and directors of SQM; (iv) the legal representatives, heirs, successors or assigns of any such excluded party; and (v) any person who sold the entirety of their position in SQM ADS before January 11, 2015.

ECF No. 161 at 27-28.

- 1 -

documents (many of which had to be translated from Spanish) from SQM and numerous nonparties; 15 depositions of fact and expert witnesses, including several in the United Kingdom and Canada that required compliance with international treaties and letters rogatory; a heavily contested motion for class certification; cross-motions for summary judgment and to exclude the Parties' respective experts; and two formal mediation sessions with a retired federal judge. The terms of the Settlement are set forth in the Stipulation of Settlement ("Stipulation"), filed simultaneously herewith.[2]

Lead Plaintiff and Lead Counsel approve of the Settlement. Lead Plaintiff is an institutional investor that oversaw the Litigation and authorized the Settlement. Lead Counsel has substantial securities litigation experience and is recognized as a leader in the field. Based upon their experience and evaluation of the facts and the applicable law, Lead Counsel and Lead Plaintiff submit that the proposed Settlement is fair, reasonable, adequate and in the best interests of the Class. This is especially so in light of the risk that the Class might recover substantially less (or nothing) if the action were litigated through trial and the likely post-trial motions and appeals that would follow (a process that could last several years). Indeed, Lead Plaintiff faced risks with regard to establishing liability and damages, including the risk that Defendant's motion for summary judgment or to exclude Lead Plaintiff's loss causation expert would be granted. Given these and other risks inherent in this complex securities class action, and the Settlement's substantial value, the Settlement represents a very good result for the Class.

At this preliminary approval stage, the Court need only make a preliminary evaluation of the Settlement's fairness, such that the Class should be notified of the proposed Settlement. In light of the substantial recovery obtained, and the risks and expenses posed by summary judgment and trial,

---

[2]  Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation. All emphasis is added and all citations are omitted unless otherwise noted.

Lead Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement and enter the Preliminary Approval Order, which will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) approve the form and content of the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") and Summary Notice of Proposed Settlement of Class Action (the "Summary Notice") attached as Exhibits 1 and 3 to the proposed Preliminary Approval Order; (iii) find that the procedures for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (iv) set a schedule and procedures for: disseminating the Notice and publication of the Summary Notice; requesting exclusion from the Class; objecting to the Settlement, the Plan of Allocation or Lead Counsel's application for an award of attorneys' fees and litigation expenses; submitting papers in support of final approval of the Settlement; and the Settlement Hearing.

## II.     HISTORY OF THE LITIGATION

In March and April, 2015, two putative class actions were filed in this Court on behalf of investors in SQM American Depositary Shares ("ADS") alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 and United States Securities and Exchange Commission Rule 10b-5.  On October 14, 2015, the Court: (1) appointed Tyne and Wear Pension Fund as Lead Plaintiff; and (2) approved Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel.  ECF No. 31.

Following an extensive investigation, Lead Plaintiff filed its Consolidated Complaint for Violation of the Federal Securities Laws ("Complaint") on January 15, 2016.  ECF No. 39[3].  The Complaint alleged that SQM, primarily through its former CEO, illegally paid politicians and their proxies for years and made materially false and misleading statements and omissions regarding its compliance with the law and code of ethics, the effectiveness of its internal controls, the accuracy of its financial statements and its dispute with a Chilean governmental entity.  *Id.*  On March 30, 2016, SQM filed a motion to dismiss the Complaint for failure to state a claim as to several elements of §10(b) and on the basis of *forum non conveniens*, arguing the litigation should proceed in Chile, where SQM is headquartered.  ECF No. 42.  The Parties supported their respective motion to dismiss briefs with declarations from experts in Chilean law.  *See* ECF Nos. 45, 51, 58.  On March 28, 2017, the Court denied in substantial part SQM's motion to dismiss but granted it with respect to SQM's statements regarding its code of ethics and dispute with the government entity.  ECF No. 67.

On April 25, 2017, SQM answered Lead Plaintiff's complaint.  ECF No. 72.  The Parties then engaged in exhaustive fact discovery, with each party propounding numerous requests for production on each other and relevant nonparties and Lead Plaintiff propounding over 50 requests for admission on SQM.  Lead Plaintiff obtained and reviewed more than 150,000 documents from SQM and third parties, including numerous banks whose securities analysts followed SQM. Because many of the documents were originally in Spanish, Lead Plaintiff commissioned certified translations of numerous documents for use at depositions and in court filings.  Lead Plaintiff, pursuant to letters rogatory in Canada, also sought and obtained documents from SQM's former

---

[3]   On February 9, 2016, Plaintiff filed a Corrected Consolidated Complaint for Violations of the Securities Laws that was substantially similar to the Complaint but corrected errors in certain graphics appearing in the Complaint.  ECF Nos. 40-41.

4837-1323-6434.v1

Board member, Wayne Brownlee, and his former employer, Potash Corporation of Saskatchewan,[4] which was a major SQM shareholder during the Class Period. *See* ECF No. 139.  SQM, in addition to obtaining numerous documents from Lead Plaintiff, also sought and received international discovery from Lead Plaintiff's investment manager, Sarasin and Partners ("Sarasin"), in London, England. *See* ECF No. 118.

In addition to obtaining and reviewing the voluminous documentary evidence, the Parties deposed numerous fact and Rule 30(b)(6) witnesses in New York, London and Saskatoon, Saskatchewan.  For example, Lead Plaintiff deposed, among others, SQM's general counsel, current Board member, former CEO (COO during the Class Period), current CEO (CFO during the Class Period), current CFO (VP during Class Period), head of investor relations, head of compliance, in-house counsel and outside counsel for the investigation committee.[5]  Lead Plaintiff also deposed SQM's Board member who resigned following revelation of the illegal payments pursuant to letters rogatory in Saskatchewan, Canada.  SQM, in addition to cross-examining certain witnesses, deposed Lead Plaintiff's head of pensions and a representative from Lead Plaintiff's investment manager, Sarasin, in London.

The Parties also engaged in substantial expert discovery.  In addition to submitting a report from a Chilean law expert in support of its opposition to the motion to dismiss, Lead Plaintiff submitted an expert report concerning market efficiency and price impact in support of its motion for class certification and a report from a loss causation and damages expert that Lead Plaintiff intended to call at trial.  SQM submitted reports from a Chilean law expert, a market efficiency expert and

---

[4]    Potash Corporation of Saskatchewan has since been acquired by Nutrien, Inc.

[5]    Many of the depositions of SQM's employees were conducted in English and Spanish through simultaneous translators, a tedious process at the best of times.

two loss causation experts it intended to call at trial.  The Parties also exchanged numerous expert rebuttal reports.  SQM deposed Lead Plaintiff's market efficiency expert and its loss causation and damages expert, and Lead Plaintiff deposed one of SQM's loss causation experts.

On January 10, 2018, Lead Plaintiff filed its motion for class certification.  ECF No. 75.  Following many months of fact and expert discovery, including document discovery and depositions of Lead Plaintiff's representative, investment manager and efficiency expert, SQM filed its opposition to class certification and a motion to exclude Lead Plaintiff's efficiency expert on December 12, 2018.  ECF Nos. 127-128.  On September 24, 2019, the Court granted Lead Plaintiff's motion, refused to exclude Lead Plaintiff's expert and certified the Class.  ECF No. 161.  The Court also appointed Lead Plaintiff as Class Representative and Robbins Geller as Class Counsel.  *Id.*

After all fact and expert discovery was completed, the Parties engaged in extensive dispositive motion practice.  On April 16, 2020, SQM filed a motion for summary judgment in its favor, arguing that Lead Plaintiff could not establish loss causation or damages as a matter of law.  ECF No. 169.  SQM also filed a motion to exclude the testimony of Lead Plaintiff's loss causation expert.  ECF No. 173.  On April 16, 2020, Lead Plaintiff filed a motion for partial summary judgment in its favor, arguing that the evidence demonstrated SQM had made several false statements with the requisite state of mind.  ECF No. 186.  Lead Plaintiff also filed motions to exclude the testimony of SQM's loss causation experts.  ECF Nos. 178, 182.  Lead Plaintiff and SQM vigorously opposed each other's motions for summary judgment and to exclude each other's expert or experts and filed replies in support of their respective motions.  *See* ECF Nos. 196, 201, 205-206, 215-217, 219, 221.

## III.    SETTLEMENT NEGOTIATIONS

On April 19, 2018, the Parties engaged in a mediation session before Judge Layn R. Phillips (Ret.), one of the most respected mediators in the country, in an attempt to settle the case.  In advance of that mediation, the Parties provided to Judge Phillips (and exchanged) detailed mediation statements, along with supporting evidence.  Unfortunately, the Parties were not able to agree, and no settlement was reached.  Then, in October 2020, while the Parties' motions for summary judgment and motions to exclude each other's experts were pending, the Parties resumed settlement discussions with the aid of Judge Phillips and submitted and exchanged supplemental mediation materials.  On October 9, 2020, the Parties attended a second face-to-face mediation session (via Zoom video conferencing) that was overseen by Judge Phillips.  Although progress was made, no agreement was reached.

After further negotiations, the Parties reached an agreement to settle the case for $62.5 million on November 11, 2020.  In light of the substantial benefit to the Class, and the significant costs and risks of further litigation – and in recognition of the fact that the proposed Settlement is the result of arm's-length negotiations by experienced counsel overseen by a well-respected mediator – Lead Plaintiff respectfully submits that the proposed Settlement warrants preliminary approval so that notice can be provided to the Class.

## IV.    SETTLEMENT TERMS

The Settlement provides that SQM will pay or cause to be paid $62.5 million into the Escrow Account, which amount plus accrued interest comprises the Settlement Fund.  Stipulation, ¶2.2. Notice to the Class and the cost of settlement administration ("Notice and Administration Expenses") will be funded by the Settlement Fund.  *Id.*, ¶2.9.  Lead Plaintiff proposes that a

nationally recognized class action settlement administrator, Gilardi & Co. LLC ("Gilardi"), be retained here subject to the Court's approval.  *Id.*, ¶¶1.3, 5.1.

The Notice provides that Lead Counsel will submit an application with its opening papers, in support of final approval of the Settlement, for an award of attorneys' fees for all Lead Plaintiff's Counsel in an amount not to exceed 17.5% of the Settlement Amount and litigation expenses in an amount not to exceed $1,400,000, plus interest accrued on both amounts at the same rate as earned by the Settlement Fund.[6]  The Notice explains that such fees and expenses shall be paid from the Settlement Fund.

Once Notice and Administration Expenses, Taxes, Tax Expenses, Court-approved attorneys' fees and expenses and any award to Lead Plaintiff in connection with its representation of the Class have been paid from the Settlement Fund, the remaining amount – the Net Settlement Fund – shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.  Any amount remaining following the distribution as a result of uncashed or returned checks shall be redistributed in an economically feasible manner.  The Plan of Allocation treats all Class Members equitably based on the timing of their SQM ADS purchases, acquisitions and sales.  The proposed Plan of Allocation, which is set forth in the Notice, is comparable to plans of allocation approved in numerous other securities class actions.

The Parties have entered into a Supplemental Agreement that provides if the number of SQM ADS purchased or acquired, represented by valid claims by persons who would otherwise be

---

[6]    In accordance with the PSLRA, Lead Counsel may also apply for the reimbursement of the costs and expenses of Plaintiff (including lost wages) directly related to its representation of the Class. Pursuant to the terms of the Stipulation, any award of expenses will be paid from the Settlement Fund.

Members of the Class, but who request exclusion from the Class, exceeds a certain amount, SQM shall have the option to terminate the Settlement.  Stipulation, ¶7.3.

The proposed Settlement is a very good recovery on the claims asserted in this Litigation and is in all respects fair, adequate, reasonable and in the best interests of the Class.

## V.      PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW LEAD PLAINTIFF TO NOTIFY THE CLASS

In the Second Circuit, there is a "'strong judicial policy in favor of settlements, particularly in the class action context.'"  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of a class action settlement. Fed. R. Civ. P. 23(e) ("The claims . . . [of] a class proposed to be certified for purposes of settlement . . . may be settled . . . only with the court's approval.").  The approval process typically takes place in two stages.  *See Deangelis v. Corzine*, 151 F. Supp. 3d 356, 357 (S.D.N.Y. 2015).  In the first stage, a court provides preliminary approval of the settlement and authorizes notice of the settlement be given to the class.  *Id.* at 357.  That is what Lead Plaintiff seeks via this motion.  In the second stage, which will only come if the Court grants this motion, "the court holds a fairness hearing to "determine whether the settlement's terms are fair, adequate, and reasonable.'" *Dover v. British Airways, PLC (UK)*, No. 12 CV 5567 (RJD) (CLP), 2018 U.S. Dist. LEXIS 174513, at *8 (E.D.N.Y. Oct. 9, 2018).

Pursuant to recently amended Rule 23(e)(1), the preliminary approval of a settlement is appropriate where "the parties . . . show[] that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."

- 9 -

Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(e)(2), which governs final approval, identifies factors that courts must consider in determining whether a class action settlement is "fair, reasonable, and adequate," including whether:

A.      the class representatives and class counsel have adequately represented the class;

B.      the proposal was negotiated at arm's length;

C.      the relief provided for the class is adequate, taking into account:

(i)      the costs, risks, and delay of trial and appeal;

(ii)      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)      the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv)      any agreement required to be identified under Rule 23(e)(3); and

D.      the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Overlapping with the factors listed in Rule 23(e) are the nine so-called *Grinnell* factors identified by the Second Circuit that district courts should consider in deciding whether to grant final approval:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  The Rule 23(e) factors are not intended to "displace" any previously adopted factors but "rather to focus the court and the lawyers on the

- 10 -

core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Advisory Committee Notes to the 2018 Amendments to the Federal Rules of Civil Procedure.  Likewise, "[i]n finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'"  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

Here, Lead Plaintiff is requesting only that the Court take the first step in the settlement approval process and grant preliminary approval of the proposed Settlement.  As stated above, the proposed Settlement provides a Fund of $62.5 million in cash, a substantial recovery that is unquestionably beneficial to the Class and plainly "within the range of possible approval."  *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

### A.    The Rule 23(e)(2) Factors Are Satisfied

#### 1.    Lead Plaintiff and Lead Counsel Have Adequately Represented the Class

As the Court found in its class certification order, ECF No. 161, Lead Plaintiff's interests in this case are directly aligned with those of the other Class Members.  Lead Plaintiff has demonstrated its ability and willingness to pursue the Litigation on the Class' behalf through its active involvement in the Litigation, including by searching for and producing documents, by traveling to and sitting for a deposition, by reviewing numerous filings and in approving the Settlement. Lead Plaintiff and its counsel zealously advocated for the interests of SQM ADS holders and have obtained an excellent result.  Lead Plaintiff's decision to settle this case was informed by a thorough investigation of the relevant claims; several years of fact and expert discovery conducted in several countries; extensive briefing on motions to dismiss, class certification, summary judgment and to exclude experts; and participation in extensive, arm's-length mediation.  The Settlement is

demonstrably the product of well-informed negotiations and vigorous advocacy on behalf of SQM ADS holders.  Accordingly, this factor weighs in favor of approval.

### 2. The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between counsel.  *See Wal-Mart*, 396 F.3d at 116.  As described above, the Settlement was reached only after extensive, arm's-length negotiations before the Hon. Layn R. Phillips (Ret.), a nationally recognized mediator experienced in securities class actions.  *See, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (stating that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) ("[T]he Court and the parties have had the added benefit of the insight and considerable talents of a former federal judge who is one of the most prominent and highly skilled mediators of complex actions.").  After good faith back-and-forth negotiations at two in-person mediation sessions and discussions following the second session, the Parties reached an agreement-in-principle to settle the Litigation.

In addition, the Parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to reaching an agreement to settle.  Lead Plaintiff agreed to settle after all fact discovery was completed, all expert discovery was completed and the Parties' dispositive motions had been fully briefed.  In the event the Court did not dispose of the case at summary judgment, trial was the only remaining stage of the Litigation.  Lead Plaintiff and Lead Counsel therefore had an adequate basis for assessing the strength of the Class' claims and Defendant's defenses when they agreed to the Settlement.  These circumstances confirm the presumption of fairness of the proposed Settlement.

- 12 -

### 3.     The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation

In assessing a settlement, courts consider the range of reasonableness in light of both the best possible recovery and litigation risks, assessing "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at \*9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). A court thus need only determine whether the settlement falls within a range of reasonableness that "'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Pantelyat v. Bank of Am., N.A.*, No. 16-cv-8964 (AJN), 2019 WL 402854, at \*7 (S.D.N.Y. Jan 31, 2019).

If approved, the Settlement will provide Class Members with $62.5 million in cash less reasonable attorneys' fees, litigation expenses, awards to Lead Plaintiff, Notice and Administration Expenses, Taxes and Tax Expenses. The amount obtained for the Class represents a very good result for the Class, representing between 22% and 30% of maximum estimated recoverable damages, which far exceeds the median and average recovery in PSLRA cases. *See* Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review* (NERA Feb. 12, 2020) ("The average settlement value for non-merger-objection cases resolved in 2019 was $30 million" (13, Fig. 9) and the median ratio of settlements to investor losses in 2019 was 2.1% (20, Fig. 13)).

Additionally, although Lead Plaintiff and Lead Counsel believe their case against SQM is strong, they acknowledge that Defendant has put forth substantial arguments concerning loss causation and damages supported by respected experts and has moved to exclude Lead Plaintiff's expert's testimony. For example, SQM argued that Lead Plaintiff could not establish the element of

- 13 -

loss causation for the SQM ADS price declines between March 11 and 17, 2015 because information revealing the truth about SQM's allegedly false statements was disclosed before March 11, many of the events that occurred between March 11 and 17 did not correct SQM's allegedly false statements and Lead Plaintiff failed to consider other market-moving information that was disclosed during that period.  ECF No. 170 at 18-28.  SQM also argued Lead Plaintiff could not establish loss causation for the SQM ADS price decline on March 18 because the information that came out that day – the resignation of three SQM Board members who had been appointed by a major shareholder in SQM – did not reveal any new information about SQM's illegal payment scheme or the alleged misstatements.  *Id.* at 29-38.  Moreover, SQM intended to challenge the materiality of its alleged misrepresentations at trial and argued Lead Plaintiff's damages model did not properly account for a rebound in the ADS price following the Class Period, thus reducing the Class' claimed damages.  *See* ECF Nos. 170 at 38-39; 196 at 6.  If any of these arguments were to be accepted by Court or a jury, any potential recovery could be eliminated or dramatically reduced.  Further, to secure a recovery absent a settlement, Lead Plaintiff would have to prevail against Defendant at summary judgment and at trial; and even if Lead Plaintiff prevailed at each of those stages, it would also have to prevail on the appeals that would likely follow and potentially have to enforce a U.S. judgment in Chile, where SQM is headquartered.

The proposed Settlement balances the risks, costs and delays inherent in complex securities class action cases such as this one.  When viewed in the context of these risks and the uncertainty of any later recovery from Defendant, the Settlement is extremely beneficial to the Class.

### 4.  The Proposed Method for Distributing Relief Is Effective

The method of the proposed notice and claims administration process is effective. Specifically, this includes well-established, effective procedures for processing claims submitted by

- 14 -

potential Class Members and efficiently distributing the Net Settlement Fund.  The notice plan includes direct-mail Notice to all those who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in the national edition of *The Wall Street Journal* and once over a national newswire service.  Also, a settlement-specific website will be created where key documents will be posted, including the Stipulation, Notice, Proof of Claim and Release form, Preliminary Approval Order and all briefs and declarations in support of the Settlement and an award of fees and expenses.

The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation will govern how Class Members' claims will be calculated and how money will be distributed to Authorized Claimants.  The Plan of Allocation was prepared with the assistance of Lead Plaintiff's damages consultant and is based primarily on the consultant's event-study analysis estimating the amount of alleged artificial inflation in the price of SQM ADS during the Class Period.

Finally, Gilardi, the Claims Administrator selected by Lead Counsel subject to Court approval, will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of its claims and will distribute the Net Settlement Fund pursuant to the Court-approved Plan of Allocation.

### 5.     Lead Counsel's Fee and Expense Request Is Fair and Reasonable

As set forth in the Notice, Lead Counsel will apply for an award of attorneys' fees on behalf of all Lead Plaintiff's Counsel of up to 17.5% of the Settlement Amount plus litigation expenses incurred in connection with the prosecution and resolution of this Litigation in an amount not to exceed $1,400,000, plus interest earned on both amounts.  This request is reasonable and below other

- 15 -

fee awards in this District.  *See, e.g.*, *In re BHP Billiton Ltd. Sec. Litig.*, No. 1:16-cv-01445-NRB, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019) (awarding 30% of $50 million settlement plus expenses), *aff'd sub nom. City of Birmingham Ret. & Relief Sys. v. Davis*, 806 F. App'x 14 (2d Cir. Mar. 12, 2020); *Landmen Partners Inc. v. Blackstone Grp. L.P.*, No. 08-cv-03601-HB-FM, 2013 WL 11330936, at *3 (S.D.N.Y. Dec. 18, 2013) (awarding fees of 33-1/3% of $85 million recovery plus expenses); *In re Deutsche Telekom AG Sec. Litig.*, No. 00-CV-0475 (NRB), 2005 WL 7984326, at *4 (S.D.N.Y. June 14, 2005) (awarding 28% of $120 million settlement).[7]

Further, as explained in the Notice, Lead Plaintiff intends to request an award for reimbursement for its time and expenses in representing the Class in an amount not to exceed $20,000.  *See, e.g.*, *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (describing payments ranging from $2,500 to $85,000).

## 6.   All Class Members Are Treated Equitably Relative to One Another

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  Here, the proposed Plan of Allocation is fair, reasonable and adequate because it does not treat Lead Plaintiff or any other Class Member preferentially.  The Plan of Allocation, which is set out in the Notice, explains how the Settlement proceeds will be distributed among Authorized Claimants.  Each Authorized Claimant, including the Lead Plaintiff, will receive a *pro rata* distribution pursuant to the Plan of Allocation.  Lead Plaintiff, like all other Class Members, will be subject to the same formulas for distribution of the Settlement.

---

[7]   A motion for final approval of the Settlement, including a motion for attorneys' fees and expenses, will be filed thirty-five (35) calendar days before the Settlement Hearing; and Lead Counsel will request that any fees awarded will be paid when the Court executes the Judgment and an order awarding such fees and expenses following final approval of the Settlement.

**B.     The Proposed Settlement Meets the *Grinnell* Factors**

*The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement*.  The first factor of the *Grinnell* analysis overlaps with the Rule 23(e)(2)(C)(i) factor of "the costs, risks, and delay of trial and appeal" addressed above. Fed. R. Civ. P. 23(e)(2)(C)(i).  In addition, this case is a testament to the complexity, expense and duration of securities class actions. The Parties advanced numerous complex legal and factual issues under the federal securities laws, especially with respect to loss causation and damages.

*The Reaction of the Class to the Settlement*.  Lead Plaintiff has participated throughout the prosecution of the case, including by producing documents, sitting for a deposition and reviewing numerous filings, and was actively involved in the decision to enter into the Settlement.  This factor is otherwise inapplicable as notice regarding the Settlement has not yet been mailed or otherwise distributed to Class Members.

*The Stage of the Proceedings*.  The volume and substance of Lead Plaintiff's and Lead Counsel's knowledge of the merits and potential weaknesses of the claims alleged are certainly adequate to support the Settlement, as discussed above in §II.  The voluminous discovery record of over 150,000 documents and 15 depositions, as well as the fully briefed motions for summary judgment and to exclude experts, permitted Lead Plaintiff and Lead Counsel to intelligently weigh the strengths and weaknesses of their case and to engage in effective settlement discussions with Defendant.  *See Global Crossing*, 225 F.R.D. at 458 ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims.").  This factor strongly supports preliminary approval of the Settlement.

*The Risk of Establishing Liability and Damages*.  The fourth *Grinnell* factor is addressed above under Rule 23(e)(2)(C)(i) ("costs, risks, and delay of trial and appeal").  For the same reasons

- 17 -

explained above that Lead Plaintiff has satisfied the Rule 23(e)(2)(C)(i) factor, Lead Plaintiff has satisfied the fourth *Grinnell* factor.

**The Risks of Maintaining the Class Action Through Trial**. Although the Class was certified in September 2019, the Second Circuit and Supreme Court routinely refine the law concerning class certification in securities cases, and the Court could have revisited certification at any time. *See* Fed. R. Civ. P. 23(c)(a) (authorizing a court to decertify a class at any time); *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *13 (S.D.N.Y. Oct. 16, 2019) (this risk weighed in favor of final approval because "a class certification order may be altered or amended at any time before a decision on the merits"). This presents a continuous risk that the case might not be maintained on a class-wide basis through trial. Thus, this factor weighs in favor of preliminary approval of the Settlement.

**Defendant's Ability to Withstand a Greater Judgment**. A court may also consider a defendant's ability to withstand a judgment greater than that secured by settlement, although it is not generally one of the determining factors. *See D'Amato*, 236 F.3d at 86. While Defendant here likely could withstand a judgment in excess of $62.5 million, courts generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement; and, in fact, the ability of defendant to pay more money does not render a settlement unreasonable. *See In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC)(JO), 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012).

**The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation**. The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597

- 18 -

F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).   The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *3-*4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in full amount of damages claimed).   Here, the Settlement recovers between 22% and 30% of Lead Plaintiff's estimate of maximum recoverable damages, and far greater than SQM's estimate, which is as low as $0.

## VI.   NOTICE TO THE CLASS SHOULD BE APPROVED

As outlined in the agreed-upon form of proposed Preliminary Approval Order, and described above, Lead Plaintiff will notify Members of the Class by mailing the Notice and Proof of Claim and Release to all Members of the Class who can be identified with reasonable effort, using multiple sources of data, including: (i) a list provided by SQM (as required by ¶3.2 of the Stipulation) identifying the purchasers of SQM ADS during the Class Period; and (ii) a proprietary list maintained by the Claims Administrator of the largest and most common U.S. banks, brokers and other nominees, and the Depository Trust Company, which acts as a clearinghouse to process and settle trades in securities.   The Notice will advise the Members of the Class of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for an award of attorneys' fees and expenses.   The Notice also will provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures for

submitting valid and timely Proofs of Claim pursuant to the proposed Plan of Allocation, objecting

to the Settlement, the proposed Plan of Allocation and/or the application for attorneys' fees and

expenses and the procedure for requesting exclusion from the Class.

In addition to mailing the Notice and Proof of Claim and Release, the Claims Administrator

will cause publication of a Summary Notice in the national edition of *The Wall Street Journal* and

once over a national newswire service.  Also, as required by the Class Action Fairness Act of 2005

("CAFA"), Defendants will timely serve a CAFA notice within ten days of the filing of the

Stipulation.

The form and manner of providing notice to the Class satisfy the requirements of due

process, Rule 23 and the PSLRA.  In short, the Notice and Summary Notice "'fairly apprise the

prospective members of the class of the terms of the proposed settlement and of the options that are

open to them in connection with the proceedings.'"  *Wal-Mart*, 396 F.3d at 114.  The manner of

providing notice, which includes individual notice by mail to all Members of the Class who can be

reasonably identified, represents the best notice practicable under the circumstances and satisfies the

requirements of due process and Rule 23.  *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ.

11515(WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008).

## VII.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiff proposes the following schedule for the Settlement-related events in this case:

| Event | Proposed Due Date |
|---|---|
| Deadline for commencing mailing of the Notice and Proof of Claim and Release to the Class (which date shall be the "Notice Date") | 21 calendar days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice | 7 calendar days after the Notice Date |
| Deadline for filing of papers in support of final approval of Settlement, Plan of Allocation and Lead Counsel's application for attorneys' fees and expenses | 35 calendar days prior to Settlement Hearing |

| Event | Proposed Due Date |
|---|---|
| Deadline for receipt of exclusion requests or objections | 21 calendar days prior to Settlement Hearing |
| Settlement Hearing | On or after 100 calendar days after entry of the Preliminary Approval Order, at the Court's convenience |
| Deadline for filing reply papers | 7 calendar days prior to Settlement Hearing |
| Deadline for submitting Proofs of Claim | 90 calendar days after the Notice Date |

## VIII.   CONCLUSION

Lead Plaintiff respectfully requests that the Court: (i) preliminarily approve the Settlement; (ii) approve the proposed form and manner of notice given to the Class; and (iii) schedule a hearing on Lead Plaintiff's motion for final approval of the Settlement and Lead Counsel's application for an award of attorneys' fees and expenses.  The Parties' agreed-upon form of proposed Preliminary Approval Order, and exhibits thereto, is filed herewith.

DATED:  December 11, 2020                        Respectfully submitted,

                                                 ROBBINS GELLER RUDMAN
                                                   & DOWD LLP
                                                 AELISH M. BAIG
                                                 MATTHEW S. MELAMED
                                                 ARMEN ZOHRABIAN
                                                 JOHN H. GEORGE


                                                 /s/ AELISH M. BAIG
                                                 AELISH M. BAIG

                                                 Post Montgomery Center
                                                 One Montgomery Street, Suite 1800
                                                 San Francisco, CA  94104
                                                 Telephone:  415/288-4545
                                                 415/288-4534 (fax)
                                                 aelishb@rgrdlaw.com
                                                 mmelamed@rgrdlaw.com
                                                 azohrabian@rgrdlaw.com
                                                 jgeorge@rgrdlaw.com

- 21 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN
ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
elleng@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SABRINA E. TIRABASSI
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
stirabassi@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

**CERTIFICATE OF SERVICE**

I Aelish M. Baig, hereby certify that on December 11, 2020, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

/s/ Aelish M. Baig
AELISH M. BAIG